JOHNSON v DETROIT EDISON COMPANY

Docket No. 289763. Submitted May 11, 2010, at Detroit. Decided June 15, 2010, at 9:00 a.m.

Sandra Johnson and Hiram Jones brought an action in the Wayne Circuit Court against their employer, Detroit Edison Company, alleging that it committed an intentional tort under MCL 418.131(1) of the Worker's Disability Compensation Act (WDCA). Plaintiffs were burned when hot ash exploded from a boiler they were emptying. Plaintiffs contended that defendant knew the boiler was in a dangerous condition but did nothing to correct the problem. Defendant moved for summary disposition, asserting that plaintiffs had failed to present sufficient evidence of an intentional tort. The court, Wendy M. Baxter, J., denied defendant's motion. The Court of Appeals granted defendant's interlocutory application for leave to appeal.

The Court of Appeals *held*:

1. Generally, an employee's exclusive remedy against an employer for work-related personal injuries or occupational disease is the benefits provided by the WDCA. The sole exception to the rule allows recovery if the employee can prove that the employer committed an intentional tort. To establish an intentional tort pursuant to the WDCA, the evidence must show that the employer deliberately acted or failed to act with the purpose of inflicting an injury on the employee. In the absence of direct evidence to that effect, the plaintiff must proffer evidence that the employer had actual knowledge that an injury would follow from its actions or omissions, that an injury was certain to occur, and that the employer willfully disregarded its actual knowledge that an injury was certain to occur.

2. A jury may conclude that a plaintiff's employer knew the injury was certain to occur under MCL 418.131(1) if the plaintiff can show (1) that the employer subjected the plaintiff to a continuously operative dangerous condition that it knew would cause an injury, (2) that the employer knew that its employees were taking insufficient precautions to protect themselves against that danger, and (3) that the employer did nothing to remedy the situation.

3. Plaintiffs made the requisite evidentiary showing in support of their intentional tort claim for purposes of avoiding summary disposition. Plaintiffs proffered evidence that numerous supervisory employees and members of management were aware that the boiler was in disrepair and, as a result, that hot ash was building up and exploding. If believed, this evidence would demonstrate defendant's actual knowledge of the dangerous condition. Plaintiffs also proffered evidence that management was aware of previous ash spews, some of which had caused injuries; that defendant's employees had run from previous ash spews in order to avoid injury; and that management had discussed the need for boiler repairs and more appropriate apparel for defendant's employees. Viewed in the light most favorable to plaintiffs, this circumstantial evidence would be sufficient to establish that defendant had actual knowledge that an injury was certain to occur. Plaintiffs also proffered sufficient evidence of willful disregard by showing that defendant failed to remedy the dangerous condition that caused plaintiffs' injuries despite actual knowledge of the condition and an opportunity to correct it. The trial court properly denied defendant's motion for summary disposition.

Affirmed.

WORKERS' COMPENSATION — INTENTIONAL TORT EXCEPTION — DANGEROUS CONDITIONS — INJURIES — CERTAINTY OF INJURIES OCCURRING.

A jury may conclude that the plaintiff's employer knew that an injury was certain to occur under MCL 418.131(1) of the Worker's Disability Compensation Act for purposes of establishing that the employer committed an intentional tort if the plaintiff establishes (1) that the employer subjected the plaintiff to a continuously operative dangerous condition that it knew would cause an injury, (2) that the employer knew that its employees were taking insufficient precautions to protect themselves from that danger, and (3) that the employer did nothing to remedy the situation.

*Edwards & Jennings, P.C.* (by *Carl R. Edwards*), for plaintiffs.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *W. Mack Faison, Douglas W. Crim,* and *Kimberly A. Berger*), for defendant.

Before: MURPHY, C.J., and K. F. KELLY and STEPHENS, JJ.

PER CURIAM. This action requires us to determine whether plaintiffs, Sandra Johnson and Hiram Jones, proffered sufficient circumstantial evidence that defendant, Detroit Edison Company, committed an intentional tort under the exception to the exclusive remedy of the Worker's Disability Compensation Act (WDCA) found in MCL 418.131(1). For the purpose of summary disposition, we conclude that plaintiffs met their burden. Specifically, we hold that a jury may conclude that an employer knew an injury was "certain to occur" under MCL 418.131(1) if a plaintiff can show that (1) the employer subjected the plaintiff to a continuously operative dangerous condition that it knew would cause an injury, (2) that the employer knew that its employees were taking insufficient precautions to protect themselves against that danger, and (3) that the employer did nothing to remedy the situation. The trial court properly denied defendant's motion for summary disposition under MCR 2.116(C)(10).

I. BASIC FACTS

At the time relevant to this lawsuit, plaintiffs were employed as power plant operators by Detroit Edison Company. In this capacity, plaintiffs were required to dump bottom ash from four industrial furnaces, or boilers, including Boiler No. 19 (Boiler 19). The boilers' by-products, including hot ash and unburned coals, were typically emptied once a day. An operator would open the boiler's ash gate, and the ash would fall through a sluice trough and be carried away by running water. If, after opening the boiler's ash gate, large coals, or "clinkers," remained, the operator would be required to break them loose with a long poker in order to sufficiently clear the boiler. Employees engaged in bottom-ash dumping were required to wear safety glasses, hardhats, earplugs, cotton gloves, jeans, a shirt, and work shoes.

On April 28, 2007, plaintiffs were in the process of emptying bottom ash from Boiler 19 when hot ash exploded from it and covered plaintiffs. Johnson suffered serious burns, and Jones suffered minor ones. Plaintiffs then brought this action, alleging that defendant was liable under the intentional tort exception to the WDCA's exclusive-remedy provision.

At her deposition, Johnson testified that at the time of the incident, two of Boiler 19's five ash gates, Nos. 2 and 3, had been broken for several months to a year and that some of the doors' seams were corroded and could not be closed all the way.[1] According to Johnson and other employees, this caused ash to build up behind the improperly operating gates, which would then tumble over to the gates that operated properly and build up there as well; this buildup would cause a blowout, or explosion, of ash through any opening, including the defective boiler doors, which would be forced open. Johnson testified that employees regularly suffered minor "prickly" burns because of the mist of hot-ash spew that would cover them as they operated the boilers and that operators regularly ran from the boilers to avoid getting burned. Johnson indicated that she suffered a burn injury from operating a broken boiler in 1999 or 2000 that was reported to management. According to Johnson, in 2004 or 2005, one of her coworkers also had to be hospitalized for a burn injury he received as a result of a hot-ash spew from Boiler 19.

Johnson further testified that, before the incident, she and other employees had expressed concerns regarding the broken ash gates to management on numerous occasions at preshift meetings, that she had had

---

[1] Other employees deposed for purposes of this litigation attested to these same deficiencies and also indicated that Boiler 19 had broken or missing latches on four of its doors.

individual discussions with Daniel Braker and Mary Webb, plant manager and production manager, respectively, regarding the safety issues caused by the broken boiler doors, and that she had also specifically told her shift supervisor, Melvin Werner, that Boiler 19's ash gates were broken. In addition, Johnson had informed Webb of an injury she suffered in 2006 when the corroded seams of a boiler caused ash to blow into her eye and she had to go to the hospital. Thereafter, Johnson and other employees, at Webb's request, showed Webb and other members of management the safety problems in the ash-dumping process. According to Johnson, management acknowledged the dangers associated with the broken boilers, but later explained that there was no money to fix the problem.

John Bost, defendant's union field-safety specialist, testified that he received many complaints from plant operators regarding the safety issues associated with bottom-ash dumping, that he had seen operators run from hot-ash spews on multiple occasions, and that it was common knowledge to anyone in the plant that the boilers were broken and in need of repair. He informed management of these complaints at least a year before plaintiffs' injuries. Bost indicated that these problems were addressed in a Plant Safety Committee[2] meeting before the April 2007 incident, at which it was discussed how to repair the system and also how to complete the job in a safer manner. According to Bost, management agreed that something had to be done, but indicated that the repairs were not in the budget. Bost also noted that repairs for boilers were to be made only in the event of an outage, i.e., when the system was "offline." Bost

---

[2] This committee is referred to alternatively throughout the record as the "Plant Safety Committee" or the "Bottom Ash Subcommittee." We refer to it throughout our opinion as the "Plant Safety Committee."

testified that such an outage occurred a month before the incident, but Boiler 19's broken doors were not repaired at that time.

Edward Wacasey, another of defendant's plant operators, participated in the Plant Safety Committee meeting. Wacasey performed a demonstration for management, showing them the broken condition of the boilers, how ash would puff, and how employees attempted to break up clinkers with long rods. According to Wacasey, defendant's fuel supply manager, Tara Daly, told him, after viewing the demonstration, that she would not do bottom-ash dumping because it was too dangerous. Wacasey made numerous recommendations for safer operation, including fixing the boilers, squirting water into the boilers from a safer distance, and wearing safer apparel, including face shields and high-cutoff gloves, but management did not adopt any of these measures. Notes from the meeting corroborated Wacasey's deposition testimony that management knew that Boiler 19 was in disrepair and that the hazards of the job included hot material flying out of the boiler.

Defendant's plant manager, Braker, averred that he was not familiar with bottom-ash dumping and was unaware of any complaints related to it. He indicated that he was also not aware of any prior serious injuries related to bottom-ash dumping. Webb attested that she was aware of Johnson's prior eye injury related to bottom-ash dumping. Webb, however, indicated that she believed bottom-ash dumping to be safe, on the basis of her conversations with shift supervisors. Plaintiffs' immediate supervisor on the day of the incident, Douglas Struble, also attested that he did not believe the condition of Boiler 19 to be unsafe.

Defendant moved for summary disposition under MCR 2.116(C)(10). The trial court denied defendant's motion under the following reasoning:

As I understand TRAVIS [*v Dreis & Krump Mfg Co*, 453 Mich 149; 551 NW2d 132 (1996)], the only way for the plaintiff[s] to maintain the tort action is if the facts that plaintiff[s] plead make out actual knowledge on the part of the employer that an injury was certain to occur that the employer willfully disregarded. The facts Plaintiffs allege is that boiler, Furnace Number 19, was in disrepair and that there had been ash spew from Number 19 over a term of years.

The exhibits show that management was aware, and there had been meetings to deal with hot material flying out and blowing out of Boiler Number 19, and the gate not working according to Plaintiff[s] . . . . That included managerial employees, supervisory employees. That would satisfy the actual knowledge component that the plaintiff[s were] required to allege and show.

\* \* \*

The issue according to the analysis is, next, whether or not an injury was certain to occur. And taking the evidence in the light most favorable to the plaintiff[s], since the hot coal and ash had already injured workers prior to April 28, 2006, I believe that plaintiff[s have] presented evidence that, *if believed by the jury, will establish that the injury* was certain to occur as required under the statute.

The last element is the specific intent or willful disregard that would allow by circumstantial evidence that plaintiff[s] to [sic] show the specific intent required under the exception.

Plaintiff[s'] theory is that management took a tour of the plant and confirmed that the gates on Furnace Number 19 were broken. I believe that on the evidentiary record, they have established that there was a continuously dangerous condition of which they were actually aware that injury was certain to occur, specifically, a burn injury.

\* \* \*

> I think that looking at the evidence in the light most favorable to the plaintiff[s], the plaintiff[s have] met the burden of creating a genuine issue of material fact such that if the jury should believe the facts as alleged by plaintiff[s], [they have] made out a claim as an exception under the statute.

This Court granted leave to appeal.[3]

## II. STANDARDS OF REVIEW

We review de novo a trial court's summary disposition ruling. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. When the record leaves open an issue on which reasonable minds could differ, a genuine issue of material fact exists that precludes summary disposition. *West*, 469 Mich at 183. We also review de novo the interpretation and application of statutes. *Gilliam v Hi-Temp Prod, Inc*, 260 Mich App 98, 108; 677 NW2d 856 (2003).

## III. APPLICABLE LAW

Typically, an employee's exclusive remedy against an employer for work-related personal injury, or occupa-

---

[3] *Johnson v Detroit Edison Co*, unpublished order of the Court of Appeals, entered April 23, 2009 (Docket No. 289763).

tional disease, is those benefits provided by the WDCA. However, the sole exception to this rule provides recovery if an employee can prove that the employer committed an intentional tort. The plaintiff's burden, in such cases, is not synonymous with the showing required for a classic intentional tort. Rather, MCL 418.131(1) sets forth the burden of proof a plaintiff must meet. That section provides, in relevant part:

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. [MCL 418.131(1).]

When a claim is brought under this provision, it is for the court to determine as a matter of law whether the plaintiff has alleged sufficient facts to sustain the intentional tort claim. *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 154; 551 NW2d 132 (1996) (opinion by BOYLE, J.). If sufficient facts are alleged, then whether the facts are true, and other questions of credibility and the weight of the evidence, become questions for the jury to decide. *Id*.

In *Travis*, 453 Mich at 161-180, our Supreme Court construed the meaning of MCL 418.131(1). In a lead opinion by Justice BOYLE and an opinion concurring in part and dissenting in part by Justice RILEY, the *Travis* Court interpreted the sentence of MCL 418.131(1) setting forth when an intentional tort exists as requiring direct evidence that "the employer . . . deliberately act[ed] or fail[ed] to act with the purpose of inflicting an injury upon the employee." *Id*. at 172. The Court recognized that the Legislature did not confine an employer's liability to traditional intentional torts and

construed the next sentence of MCL 418.131(1) as permitting liability when direct evidence of an intentional tort is unavailable, but could be inferred from the surrounding circumstances. *Id.* at 173 Thus, the specific intent element may be satisfied in the absence of direct evidence if the plaintiff can show that the employer had "actual knowledge that an injury is certain to occur, yet disregards that knowledge." *Id.* at 180.

Because plaintiffs did not proffer direct evidence in this case, it is necessary for us to determine their burden under the sentence of the statute permitting the inference. Breaking that sentence down into its components, it requires a plaintiff to make several showings. First, a plaintiff must show that his or her employer possessed the requisite knowledge. Under the statute, "actual knowledge" cannot be constructive, implied, or imputed; rather, a plaintiff must show that the employer had actual knowledge that an injury would follow from the employer's act or omission. *Id.* at 173-174. In the case of a corporate employer, a plaintiff need only show that "a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 714; 777 NW2d 205 (2009) (citation and quotation marks omitted).

Second, a plaintiff must show that an injury is "certain to occur." "An injury is certain to occur if there is no doubt that it will occur . . . ." *Herman v Detroit*, 261 Mich App 141, 148; 680 NW2d 71 (2004). Questions of probability play no role in this inquiry. *Travis*, 453 Mich at 174; *Palazzola v Karmazin Prod Corp*, 223 Mich App 141, 149-150; 565 NW2d 868 (1997). It is not enough to satisfy this showing by demonstrating "an employer's awareness that a dangerous condition ex-

ist[ed]," *Palazzola*, 233 Mich App at 150, or that an employer knew an accident was likely, *Bazinau v Mackinac Island Carriage Tours*, 233 Mich App 743, 756; 593 NW2d 219 (1999). A plaintiff may satisfy this prong with circumstantial evidence. The *Travis* Court explicitly approved of one type of circumstantial evidence that would satisfy this element:

> When an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury [was] certain to occur. [*Travis*, 453 Mich at 178 (opinion by BOYLE, J.).]

Conversely, the Court indicated that an employer's attempts to repair a device and the employer's repeated warnings to its employees regarding the risk may remove the injury from the realm of certainty. *Id.* at 177.

Third, and last, a plaintiff must also show that the employer disregarded the employer's actual knowledge that an injury was certain to occur. This disregard must have been "willful," which denotes a state of mind that amounts to more than mere negligence. *Id.* at 178-179.

#### IV. ANALYSIS

Defendant argues that plaintiffs have failed to meet their burden of showing that it had actual knowledge that an injury was certain to occur and willfully disregarded it. Specifically, defendant contends that it had no actual knowledge that these particular plaintiffs would be injured on the date of the incident and that the injuries were merely foreseeable, not certain. We disagree.

At the outset, we reject defendant's implicit argument, made throughout their brief on appeal, that plaintiffs are required to show that defendants had actual knowledge that plaintiffs in particular would be injured in a specific way on a certain date. There is no requirement under the plain language of the statute that requires a plaintiff to make such a showing. Rather, the statute expressly uses the phrases *"an injury"* and *"an employee,"* and it makes absolutely no mention of the date of an injury. MCL 418.131(1) (emphasis added). Had the Legislature wished injured employees to prove their claims with additional particularity, it could have so required by using the term "the" rather than the indefinite article "an." See *Burise v City of Pontiac*, 282 Mich App 646, 654; 766 NW2d 311 (2009) (" '[T]he' is defined as a definite article . . . used . . . before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article a or an . . . .") (citations and quotation marks omitted). We will not read additional terms into a plain and unambiguous statute. Thus, adhering to the plain language of the statute and its meaning as construed by *Travis*, we now consider whether plaintiffs, for the purpose of avoiding summary disposition, have met their burden of showing that defendant had actual knowledge that an injury was certain to occur and willfully disregarded it.

## A. ACTUAL KNOWLEDGE

First, evidence on the record demonstrates that numerous supervisory employees and members of management were aware that Boiler 19 was in disrepair. Johnson told her immediate supervisor that two doors to Boiler 19 were broken, causing a buildup of ash that would explode. Numerous other operators informed

management of the same problem. The issue was also discussed at length during the Plant Safety Committee meeting, at which members of management observed the broken ash gates of Boiler 19. Accordingly, we conclude, that viewed in the light most favorable to plaintiffs, the record establishes the actual-knowledge prong.

### B. INJURY CERTAIN TO OCCUR

Next, plaintiffs must establish that defendant had actual knowledge that the injury was "certain to occur." Taking the facts most favorable to plaintiffs, as we must do, it is our view that plaintiffs have also proffered sufficient circumstantial evidence that injury was certain to occur. Boiler 19 was in disrepair and causing dangerous ash spews for at least a year before the incident. Management was aware of this through numerous preshift briefings, reports from Bost, and its own observations at the Plant Safety Committee demonstration. Although many operators had been able to avoid injury from ash blowouts in the past by running from the boiler, management knew that Johnson had suffered an eye injury from an ash blowout in 2006 and that another employee had suffered a burn that required hospitalization in 2004 or 2005. Further evidence that injury was certain to occur is the fact that one member of management indicated that she would not do the job because it was too dangerous. Moreover, management dismissed Johnson's, and several other employees', complaints about the dangerous condition of Boiler 19 because a "fix" was not in defendant's budget. Management again offered this same budgetary constraint as a reason not to fix the boiler after the Plant Safety Committee meeting, although management unequivocally agreed that something had to be

done. Numerous solutions had also been discussed at this meeting, including safer ways to perform bottom-ash dumping and more appropriate apparel, but defendant's then current recommended clothing for bottom-ash dumping—none of which was fire-resistant—was not replaced with safer garments, and the safer proposed methods for performing bottom-ash dumping were not implemented. Instead, management allegedly did nothing. Additionally, about a month before the incident, an outage occurred and the boiler was not fixed, even though boilers had been slated for repair in the event of an outage. These facts constitute circumstantial evidence, if believed by a jury, that defendant knew injury was certain to occur: defendant knew of the inherent dangers involved that would cause injury, knew its employees were taking their own insufficient precautions, as demonstrated by the knowledge of previous injuries and employee complaints, and yet did nothing to remedy the problem. In other words, defendant subjected its employees to a continuously operating dangerous condition. From this evidence, a factfinder could conclude that defendant had actual knowledge that an injury was certain to occur.

Defendant, however, argues that because no employee operating Boiler 19 had been previously seriously burned, the injury was not a certainty, but merely a foreseeable risk. At best defendant's argument merely creates a question of fact, insufficient to avoid the trial court's denial of summary disposition. The absence of a previous serious injury, or even the absence of previous minor ones, does not necessarily eliminate certainty that an injury will occur. *Travis*, 453 Mich at 186; *Fries*, 285 Mich App at 716 (explaining *Travis*). Similarly, the fact that employees knew of the danger and had been able to run safely from the exploding boiler in the past does not support defendant's position. Rather, it tends

to show that defendant's employees knew the danger was imminent and inherent in the absence of some remedial measures, including running from the boiler, and, further, because it can be inferred that defendant knew its employees were running from the boiler, given employees' numerous complaints, and defendant's admission that something needed to be done, that it too was aware of the threat posed by Boiler 19. Thus, taking all the evidence in the light most favorable to plaintiffs, we conclude that plaintiffs have demonstrated, by way of circumstantial evidence, a sufficient question of fact that defendant had actual knowledge that an injury was certain to occur.

Defendant also asserts that there needs to be a failure to warn of a danger by the employer and a concomitant lack of knowledge of the danger by an employee before a court can find a continuously operative dangerous condition. However, the Supreme Court's ruling in *Golec v Metal Exch Corp*, the companion case to *Travis*, undermines defendant's contention. *Golec* involved an employee, the plaintiff, who was loading a furnace with scrap metal in a smelting factory when there was an explosion that resulted in the plaintiff's being showered with molten aluminum. The plaintiff claimed that closed aerosol cans or water, or both, contained in the scrap caused the explosion. Before the explosion that caused the injuries for which the plaintiff filed suit, there had been a minor explosion involving the plaintiff, also while he was loading scrap, and the plaintiff indicated his belief at the time that this minor explosion was caused by closed aerosol cans or water, or both, contained in the scrap. But he was told to continue working. *Travis*, 453 Mich at 157-159. Therefore, *Golec* presented a situation in which the employee had knowledge of a potential hazard, proceeded to work, and was later injured because of that

same hazard. The Court held that a genuine issue of material fact existed concerning whether the employer committed an intentional tort, and the lead opinion noted that "[i]f the facts as alleged by plaintiff are established at trial, then plaintiff has proved the existence of a continually operative dangerous condition." *Id.* at 186. Accordingly, the "continually operative dangerous condition" doctrine was invoked despite the evidence that the employee had some knowledge of the hazard before the injury, as was the case here.

We hold that an employee's knowledge of a danger, whether gained through information provided by the employer or otherwise, does not preclude invocation of the intentional tort exception based on the existence of a continually operative dangerous condition. There are situations in which, even when an employee has been warned of a hazard or otherwise has knowledge of the hazard, there remains a certainty of injury because there is no reasonable and effective means by which the employee can avoid the harm while still meeting his or her obligation to properly perform the work demanded by the employer. A reasonable juror could find that such was the situation in the instant case and that an injury was certain to occur.

We emphasize, however, that our conclusion must not be understood to mean that evidence of a failure to repair, despite warnings, is sufficient circumstantial evidence that an employer knew an injury was certain to occur. The trial court here found that "since the hot coal and ash had already injured workers prior to April 28, 2006, . . . plaintiff[s have] presented evidence that, if believed by the jury, will establish that the injury was certain to occur as required under the statute." A mere allegation of a prior injury, standing alone, is not enough to meet the rigorous standard set forth in MCL

418.131(1) because it does not demonstrate absolute certainty. Thus, in this regard, the trial court's ruling was erroneous as a matter of law. However, while the trial court's reasoning on this element was in error, it reached the right result, and we will not reverse its ultimate decision. See *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

### C. WILLFUL DISREGARD

Finally, plaintiffs must show that defendant willfully disregarded its knowledge that injury was certain to occur. As noted, plaintiffs presented evidence that defendant failed to remedy the condition that caused plaintiffs' injuries, despite defendant's knowledge of the condition and the opportunity to remedy it during an outage. Management was fully apprised of the danger, but cited budgetary constraints as a reason for not repairing Boiler 19. Thus, viewing the evidence in a light most favorable to plaintiffs, they have introduced sufficient evidence that defendant knew of an inherent danger and willfully disregarded it.

### V. CONCLUSION

Under the particular circumstances of this case, plaintiffs have made the requisite showing in support of their intentional tort claim for purposes of avoiding summary disposition. To state our holding succinctly, if the plaintiff can show that the plaintiff's employer subjected the plaintiff to a continuously operative dangerous condition that it knew would cause an injury, that the employer knew that its employees were taking insufficient precautions to protect themselves against that inherent danger, and that the employer took no action to remedy the situation, a jury may conclude that the employer knew the injury was certain to occur

under MCL 418.131(1). This holding should not be construed in any way as derogating from the rigorous burden that the Legislature has imposed on plaintiffs seeking redress under the intentional tort exception of the WDCA.

The trial court did not err by denying defendant's motion for summary disposition.

Affirmed.