# STATE OF MICHIGAN

# COURT OF APPEALS

DEAH CHARLES, Personal Representative of the
ESTATE OF RYAN CHARLES

      Plaintiff-Appellee,

v

SPARTAN STEEL COATING, LLC,

      Defendant-Appellant.

UNPUBLISHED
January 12, 2016

No. 323538
Monroe Circuit Court
LC No. 13-035216-NO

## ON REMAND

Before: TALBOT, C.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

This case is before us on remand from our Supreme Court for consideration as on leave granted[1] the trial court's order denying defendant's motion for summary disposition in this action alleging a claim under MCL 418.131(1), the intentional tort exception to the exclusive remedy provision of the Workers' Disability Compensation Act (WDCA), MCL 418.101 *et seq*. We reverse and remand for entry of a judgment in defendant's favor.

On October 24, 2011, plaintiff's decedent became trapped and was crushed while he was making a belt adjustment on a belt wrapper at the exit end of a steel recoiler machine at defendant's facility where he worked. In her complaint, plaintiff alleged that on the day of this fatal accident, her decedent was asked to make a belt adjustment to this machine. Plaintiff's decedent notified the exit end machine operator that he was going to make the adjustment and "pulled the plug on the machinery to disable it." At some point the exit end machine operator believed plaintiff's decedent was done and pressed the "auto prep" button which activated the machinery. When the machinery cycled, plaintiff's decedent became trapped and was crushed. Plaintiff alleged that the plug her decedent pulled before beginning to work on the machinery only caused a partial lockout—not a complete lockout. Plaintiff also alleged that defendant knew or should have known that only partial lockouts occurred when such plug was pulled, which was extremely dangerous and made serious injury and/or death "certain to occur" as

---

[1] *Charles v Spartan Steel Coating, LLC*, 497 Mich 974; 859 NW2d 710 (2015).

contemplated under MCL 418.131(1). In her one-count complaint, plaintiff alleged that defendant had actual knowledge that the machinery was not completely shut down during a belt adjustment and, thus, knew that an injury was certain to occur but willfully disregarded that knowledge. Accordingly, the intentional tort exception to the exclusive remedy provision of the WDCA, MCL 418.131(1), was applicable and permitted this action.

Eventually defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). Defendant argued that, although plaintiff took the depositions of several of its employees and numerous documents had been produced at her request, plaintiff had no evidence to support her claim that defendant deliberately acted or failed to act with the purpose of causing injury to an employee like her decedent. The particular process of adjusting the belt at issue in this case had been used for years, including by plaintiff's decedent, and there was no evidence that any injury ever occurred. Plaintiff simply had neither direct nor circumstantial evidence establishing the requisite intent to injure. Accordingly, the WDCA provided the exclusive remedy for plaintiff's decedent's death and prevented this action.

Plaintiff responded to defendant's motion for summary disposition, arguing that the belt wrapper had been "malfunctioning for years" and required manual belt adjustments 4-5 times a shift; thus, defendant created a "continuously dangerous work environment." And defendant's "safety" protocol was to pull a plug, but that did not de-energize the entire piece of machinery during this necessary maintenance, i.e., the manual belt adjustments. In fact, Neil Bruss, defendant's operations manager, and Chris Shuff, defendant's maintenance manager, testified that the belt had not been tracking properly for a long time and there was no documentation to indicate that this problem was being corrected. Accordingly, plaintiff argued, defendant subjected her decedent to a "continually dangerous operative condition" as explained in *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 178; 551 NW2d 132 (1996), *Johnson v Detroit Edison Co*, 288 Mich App 688, 698; 795 NW2d 161 (2010), and *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 716-717; 777 NW2d 205 (2009). That is, defendant knew the belt wrapper was continually mis-tracking, yet the proper safety protocol was not in place and employees were forced to manually adjust the belt wrapper which subjected them to a risk of injury and death on a daily basis. Thus, plaintiff argued, defendant's motion for summary disposition should be denied.

Defendant replied to plaintiff's responsive brief, arguing that plaintiff's reliance on the "continuously operative dangerous condition" was misplaced. For that doctrine to apply, the employer must know that a condition exists that will in fact cause injury—either because injury had already occurred or because there was a near-miss—yet the employer did not inform its employee about the condition or protect the employee from confronting the condition. But here, plaintiff's decedent had performed the same belt adjustment daily for about two years before the accident and there was no evidence of any injury occurring or of any near-misses occurring. "While the belt had to be adjusted a couple of times a shift, the testimony was there was a specific procedure to be followed and that procedure was safe and had been performed for years without incident." Thus, plaintiff had no evidence proving that defendant had actual knowledge that an injury was certain to occur and cannot establish her intentional tort claim. Accordingly, defendant was entitled to judgment as a matter of law.

Following oral arguments, the trial court denied defendant's motion for summary disposition. The trial court held that, according to the deposition testimony, there was a continuous problem with the belt wrapper not tracking right and, while defendant had talked to the manufacturer about the problem, the problem was not corrected. Defendant's managerial employees knew about this dangerous problem and such knowledge could be imputed to defendant. The trial court concluded that a genuine issue of material fact existed which precluded summary disposition in defendant's favor.

Defendant filed an application for leave to appeal from the trial court's order denying its motion for summary disposition, which this Court denied. *Charles v Spartan Steel Coating, LLC*, unpublished order of the Court of Appeals, entered February 17, 2015 (Docket No. 323538). Thereafter, defendant filed an application for leave to appeal to our Supreme Court and, in lieu of granting leave to appeal, the Court remanded this case to us for consideration as on leave granted. *Charles v Spartan Steel Coating, LLC*, 497 Mich 974; 859 NW2d 710 (2015). The trial court proceedings were also stayed. *Id*.

Defendant argues that the trial court erred when it denied its motion for summary disposition because plaintiff had no evidence to support her claim that the intentional tort exception to the exclusive remedy provision of the WDCA applied in this case. We agree.

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Pugh v Zefi*, 294 Mich App 393, 395; 812 NW2d 789 (2011). "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Huron Mountain Club v Marquette Co Rd Comm*, 303 Mich App 312, 321; 845 NW2d 523 (2013). Summary disposition is proper under MCR 2.116(C)(10) where, even considering the evidence submitted by the parties in the light most favorable to the opposing party, no genuine issue of any material fact was established and, thus, the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

An employee's remedy against an employer for a personal injury is exclusively provided by the WDCA with one exception—a claim alleging an intentional tort. MCL 418.131(1). As explained by our Supreme Court in *Travis*, 453 Mich at 188:

> [T]he issue whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the court, while the issue whether the facts are as plaintiff alleges is a jury question. If the latter issue were for the court, all jury trials in this type of case would have been eliminated, and we find that this was not the intention of the Legislature. [Quoting *McNees v Cedar Springs Stamping Co*, 184 Mich App 101, 104; 457 NW2d 68 (1990).]

The intentional tort exception, MCL 418.131(1), provides:

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded

-3-

that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court.

In *Travis*, 453 Mich at 172, our Supreme Court explained the first sentence of MCL 418.131(1) as follows: "[T]o state a claim against an employer for an intentional tort, the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee." There must be a specific intent to injure. *Id*. The *Travis* Court held that the second sentence of MCL 418.131(1) "will be employed when there is no direct evidence of intent to injure, and intent must be proved with circumstantial evidence." *Id*. at 173. That is, the second sentence "is a substitute means of proving the intent to injure element of the first sentence." *Id*.

In that regard, the *Travis* Court noted that "actual knowledge" is not constructive, implied or imputed knowledge, and it is not sufficient to allege that an "employer should have known, or had reason to believe, that injury was certain to occur." *Id*. Further, that an injury is "certain to occur" means that "no doubt exists with regard to whether it will occur." *Id*. at 174. With regard to this certainty requirement, the *Travis* Court held: "When an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury is certain to occur." *Id*. at 178. And the term "willfully disregard[s]" was "intended to underscore that the employer's act or failure to act must be more than mere negligence, that is, a failure to act to protect a person who might foreseeably be injured from an appreciable risk of harm." *Id*. at 179.

The *Travis* Court summarized the two sentences of the intentional tort exception as follows: "[A]n employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent. The second sentence then allows the employer's intent to injure to be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge. *Id*. at 180; see also *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 149-150; 565 NW2d 868 (1997).

In this case, defendant argues that "it is not sufficient for a plaintiff to allege that an employer knew a big industrial machine had maintenance issues, and claim that requiring employees to perform maintenance on big industrial machines will likely lead to injuries over time." And here, defendant argues, plaintiff had no evidence that a conscious choice was made to injure plaintiff's decedent and that defendant deliberately acted in furtherance of that intent.

To the contrary, plaintiff argues, defendant subjected its maintenance employees to a continuously operative dangerous condition that it knew would cause injury or death and did nothing to protect its employees from the condition. Specifically, defendant "required its maintenance workers to perform belt-adjustments multiple times per shift while the machinery was live, the machinery could not be de-energized by pulling a plug that was ostensibly supposed to de-energize the area, and the machinery could be actuated at any time by another employee in a remote location."

-4-

First, it appears plaintiff is claiming that the "deliberate act," under MCL 418.131(1), that led to her decedent's fatal injuries was defendant's failure to remedy the dangerous condition of exposing its employees like plaintiff's decedent to energized machinery associated with the steel recoiling process during the performance of frequent and necessary maintenance. That is, defendant neither fixed the belt wrapper nor implemented a complete lockout procedure.

Second, it appears that plaintiff is arguing that, while there is no direct evidence that defendant "specifically intended an injury," MCL 418.131(1), circumstantial evidence establishes a specific intent to injure. See *Travis*, 453 Mich at 173. In other words, defendant "had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." *Id*. at 172, quoting MCL 418.131(1). It appears clear from the deposition testimony that defendant's supervisory employees had "actual knowledge" that the belt wrapper required frequent manual belt adjustments and not all of the machinery associated with the belt wrapper was completely locked-out during this necessary maintenance. However, the evidence does not establish that defendant's supervisory employees had actual knowledge "that an injury was certain to occur and willfully disregarded that knowledge." MCL 418.131(1). For an injury to be "certain to occur" there must be no doubt that it will occur; it is not enough that an employer knew an accident was likely. *Johnson*, 288 Mich App at 697-698 (citation omitted).

In that regard, plaintiff claims that a jury could conclude that defendant knew an injury was "certain to occur" because her decedent was forced to confront a "continually operative dangerous condition." That is, plaintiff argues, "every encounter with the belt-wrapper inherently carried the potential for an inadvertent and unexpected cycling of the machinery." While it is true that the human error of activating the machinery during the necessary maintenance posed a risk of injury, we disagree that it was a "continually operative dangerous condition" that satisfies the certainty requirement necessary to infer that defendant had a specific intent to injure employees like plaintiff's decedent. See *Travis*, 453 Mich at 180. The cases that plaintiff relies on in support of her assertion are distinguishable.

For example, in *Golec v Metal Exch Corp*, which was the companion case to *Travis*, 453 Mich at 183, the plaintiff's employer required the plaintiff to continue to load scrap metal into a furnace despite knowing that an explosion had occurred earlier the same night, allegedly because aerosol cans were in the same scrap pile and because the scrap was wet. *Id*. at 158, 184-186. The plaintiff suffered burn injuries from a second furnace explosion that occurred later that night, *id*. at 158-159, and the Court held that a jury could find that a continually operative dangerous condition existed because every load of scrap had the potential to explode. *Id*. at 186. Similarly, in *Johnson*, 288 Mich App at 690-691, the plaintiffs' jobs involved emptying hot ash and unburned coals from a boiler which was known to have broken ash gates that caused ash to build up and then spew or explode onto employees, who routinely sustained burns in varying degrees. After noting that the defendant did nothing despite knowing that the boiler was in disrepair and causing "dangerous ash spews for at least a year" which had resulted in burn injuries, this Court concluded that the jury could find the defendant subjected its employees to a continuously operative dangerous condition. *Id*. at 700-701. Likewise, in *Fries*, 285 Mich App at 717-718, this Court concluded that the jury could find the employer subjected the plaintiff to a continually operative dangerous condition because an unguarded stamping press was known to cycle on its own when loose clothing interrupted the control buttons' light signal which, because

of how the machine operated, was certain to cause injury to an employee wearing a loose garment.

In contrast to those cases, here, plaintiff failed to present any evidence from which a jury could conclude that the danger presented with regard to the frequent and necessary belt wrapper maintenance constituted a "continuously operative dangerous condition." Plaintiff argues that "every encounter with the belt-wrapper inherently carried the potential for an inadvertent and unexpected cycling of the machinery." But unlike in the cases of *Golec*, *Johnson*, and *Fries*, here, there was no history of inadvertent activation of the machinery, of injury, or of near-misses occurring while a belt was being manually adjusted over the several years that such maintenance had been necessary. And even if the machinery was unexpectedly cycled during the belt adjustment, plaintiff did not show that an injury would always result. As in *Travis*, 453 Mich at 182, plaintiff simply was not required to confront a continuously operating dangerous condition.

But even if we held that plaintiff's decedent was required to confront a "continuously operative dangerous condition," such condition "may form the basis of a claim under the intentional tort exception only if the employer *knows* the condition will cause an injury and refrains from informing the employee about it." *Alexander v Demmer Corp*, 468 Mich 896; 660 NW2d 67 (2003). Plaintiff has not established that defendant knew the alleged condition would cause injury and yet failed to inform plaintiff's decedent about it. And while defendant may have known that the frequent belt adjustments posed a risk of injury considering that all of the associated machinery was not locked-out or rendered non-operational during this maintenance, such awareness is insufficient to establish that defendant knew that an injury was "certain to occur and willfully disregarded that knowledge." MCL 418.131(1); see also *Travis*, 453 Mich at 179; *Johnson*, 288 Mich App at 697-698. Therefore, plaintiff failed to establish that defendant possessed the specific intent to injure her decedent. Accordingly, we reverse the trial court's order denying defendant's motion for summary disposition and remand for entry of a judgment in defendant's favor.

Reversed and remanded for entry of a judgment in defendant's favor. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly