*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMANDA R. FIROSZ and KATIE JONES,
Copersonal Representatives of the ESTATE OF
JAMES JONES, and MELANIE HUTSELL, Special
Personal Representative of the ESTATE OF
BENJAMIN ALLEN WELCH,

UNPUBLISHED
November 27, 2024
9:41 AM

Plaintiffs-Appellants,

v

No. 365607
Macomb Circuit Court
LC No. 2021-000239-NO

STONE WAREHOUSE OF MICHIGAN, L.L.C.,
STONE WAREHOUSE, L.L.C., STONE
WAREHOUSE OF MICHIGAN, L.L.C., doing
business as STONE WAREHOUSE, USA, STONE
WAREHOUSE, L.L.C., doing business as STONE
WAREHOUSE OF TAMPA and STONE
WAREHOUSE USA, STONE GALLERY, L.L.C.,
and SD GROUP INTERNATIONAL, L.L.C.,

Defendants-Appellees.

Before: K. F. KELLY, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Plaintiffs filed this action after a workplace accident resulted in the deaths of their decedents. They appeal by right the trial court's order granting defendants' motions for summary disposition. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL BACKGROUND

This case arises from the simultaneous deaths of James Jones and Benjamin Allen Welch while working for defendant Stone Warehouse of Michigan, L.L.C. (SWM). SWM is a wholesale distribution business in Sterling Heights that sells granite, marble, and quartz slabs. While attempting to move stone slabs stored on A-frame storage racks in one of SWM's warehouses, stone slabs stored on adjacent A-frame storage racks fell on the decedents, crushing them.

-1-

Plaintiffs filed this action alleging wrongful death under MCL 600.2922 and the intentional-tort exception to the exclusive-remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*., against SWM. They also alleged negligence against the remaining corporate defendants (collectively, the Florida defendants).[1]

SWM moved for summary disposition, arguing that plaintiffs failed to establish a genuine issue of material fact regarding whether SWM had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge as required under MCL 418.131 to avoid the exclusive-remedy provision of the WDCA. In response, plaintiffs argued that the evidence showed that SWM's managerial personnel had actual knowledge of the unsafe conditions in the warehouse, including the configuration of the A-frame storage racks in the overcrowded warehouse that eliminated "escape routes" for workers to avoid falling stone slabs. Plaintiffs maintained that the A-frame storage racks were placed too close together, employees had expressed concern for their safety, and SWM's supervisors and managers did nothing to rectify the situation despite knowledge of the employees' complaints. Plaintiffs asserted that, at a minimum, there existed a genuine issue of material fact regarding whether SWM had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The trial court granted SWM's motion. The court determined that although plaintiffs presented evidence that SWM was aware of the dangers that the overcrowded warehouse presented, they failed to present evidence that SWM had actual knowledge that an injury was certain to occur as a result of those dangers.

The Florida defendants also moved for summary disposition with respect to plaintiffs' negligence claim. They argued that because the claim was predicated on an alleged dangerous condition on the land, it sounded in premises liability rather than ordinary negligence. They asserted that because they did not possess, own, or control the warehouse , there was no basis to hold them liable. Plaintiffs opposed the motion, denying that the claim sounded in premises liability and asserting that the claim was based on the duty of care that the Florida defendants owed the decedents. Plaintiffs maintained that the Florida defendants controlled the purchase and delivery process and were responsible for the overcrowded and unsafe condition in the warehouse. The trial court determined that plaintiffs failed to adequately address whether their claim sounded in ordinary negligence rather than premises liability and therefore abandoned the claim. The court also determined that, even assuming that plaintiffs properly pleaded a negligence claim, they failed to establish that the Florida defendants owed a duty to the decedents.

Plaintiffs now appeal as of right.

## II. INTENTIONAL-TORT EXCEPTION TO WDCA'S EXCLUSIVE-REMEDY PROVISION

Plaintiffs argue that the trial court erred by granting summary disposition in SWM's favor under MCR 2.116(C)(10) on the basis that they failed to establish a genuine issue of material fact regarding whether SWM had actual knowledge that injuries were certain to occur as contemplated by MCL 418.131(1). We disagree.

---

[1] In addition, plaintiffs alleged civil conspiracy against all defendants, but they do not challenge the trial court's decision granting summary disposition in defendants' favor regarding that claim.

## A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Although SWM moved for summary disposition under both MCR 2.116(C)(8) and (C)(10), the trial court granted summary disposition in SWM's favor under subrule (C)(10) regarding the WDCA.

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.* A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted). [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis in original).]

## B. ANALYSIS

Generally, the WDCA provides an employee's exclusive remedy against an employer for a work-related personal injury. *Johnson v Detroit Edison Co*, 288 Mich App 688, 695-696; 795 NW21d 161 (2010). An employee can establish the sole exception to the exclusive-remedy provision of the WDCA by proving that the employer committed an intentional tort. *Id.* at 696. In this regard, MCL 418.131(1) provides, in pertinent part:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.

"[I]t is for the court to determine as a matter of law whether the plaintiff has alleged sufficient facts to sustain the intentional tort claim." *Johnson*, 288 Mich App at 696. "If sufficient facts are alleged, then whether the facts are true, and other questions of credibility and the weight of the evidence, become questions for the jury to decide." *Id.*

In *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 169-180; 551 NW2d 132 (1996) (opinion by BOYLE, J.), our Supreme Court interpreted the third and fourth sentences of MCL 418.131(1). Because the Court's analysis of the statute was limited to those two sentences, the Court referred to them as the "first sentence," i.e., the third sentence in MCL 418.131(1), and the "second sentence," i.e., the fourth sentence in MCL 418.131(1). *Id.* For the sake of consistency, we likewise refer to the sentences at issue as the first and second sentences, although they are not the first and second sentences of MCL 418.131(1).

The *Travis* Court determined that the phrase "deliberate act" in the first sentence "encompass[es] both commissions and omissions" on the part of the employer. *Id*. at 169. The Court reasoned that in most cases in which a plaintiff alleges the intentional-tort exception, the injury did not result from "traditional examples of intentional torts, such as a battery." *Id*. Instead, the Court stated, a workplace injury more commonly arises from an omission, "such as a failure to remedy a dangerous condition." *Id*. The Court also looked to the Legislative history of MCL 418.131, to the Court's previous decision in *Beauchamp v Dow Chem Co*, 427 Mich 1; 398 NW2d 882 (1986), and to the second sentence, pertaining to an employer's failure to act, in concluding that the phrase "deliberate act" "include[s] a situation in which an employer consciously fails to act." *Id*. at 169-170.

Our Supreme Court next addressed the phrase "specifically intended an injury" in the first sentence. The Court rejected the notion that the Legislature's use of the word "intended" was meant to include situations in which the actor was " 'substantially certain' " of the consequences of his acts." *Id*. at 171. The Court explained:

> Whatever else the Legislature intended, we are confident it intended to prohibit tort liability if an employer is only substantially certain that injury will result from his acts. Therefore, we conclude that the phrase "specifically intended an injury" means that the employer must have had in mind a purpose to bring about given consequences.
>
> \* \* \*
>
> Thus, the construction of "specifically intended an injury" that effects the intent of the Legislature as manifested by the legislative history is that in acting or failing to act, *the employer must have determined to injure the employee; in other words, he must have had the particular purpose of inflicting an injury upon his employee*. [*Id*. at 171-172 (emphasis added).]

Interpreting the entire first sentence in accordance with the Legislature's intent, the Court opined that, "to state a claim against an employer for an intentional tort, the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee." *Id*. at 172.

Next, our Supreme Court discussed the Legislature's intent with respect to the second sentence, stating that the sentence is "strong evidence" that the Legislature did not intend to limit liability to "true intentional torts." *Id*. at 173. Instead, the Court opined that the Legislature recognized "a limited class of cases" in which an employer can be held liable absent "a classic intentional tort and as a means of inferring an employer's intent to injure from the surrounding circumstances in those cases." *Id*. The Court further stated:

> In other words, the second sentence will be employed when there is no direct evidence of intent to injure, and intent must be proved with circumstantial evidence. It is a substitute means of proving the intent to injure element of the first sentence. The three phrases in this sentence that we must construe are: "actual knowledge," "certain to occur," and "willfully disregarded." [*Id*.]

-4-

In construing the phrase "actual knowledge," the Court reasoned that by using the term "actual knowledge" rather than "the less specific word 'knowledge,' " the Legislature meant "that constructive, implied, or imputed knowledge is not enough." *Id*. The Court further stated that it is similarly insufficient "to allege that the employer should have known, or had reason to believe, that injury was certain to occur." *Id*. Instead, the Court opined that "[a] plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Id*. at 173-174.

Regarding the requirement that an injury "was certain to occur," the Court stated that that phrase sets "an extremely high standard" and that "the laws of probability" regarding whether an injury will occur "play no part in determining the certainty of injury." *Id*. at 174. Similarly, the Court stated that whether an injury has happened before or has never happened before does not establish whether an injury will occur. *Id*. In addressing the level of awareness that an employer must have in order to satisfy the certainty requirement, the Court stated that it is insufficient for a plaintiff to establish that an employer knew that a dangerous condition existed. *Id*. at 176. Instead, the employer must have been aware that an injury was certain to occur as a result of what the employer did (or did not do). *Id*. Moreover, the Court opined that "[w]hen an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury is certain to occur." *Id*. at 178.

In addition, the Court opined that the term "willfully" in the phrase "willfully disregarded" means that an employer's act or failure to act must involve more than mere negligence, or the "failure to act to protect a person who might foreseeably be injured from an appreciable risk of harm." *Id*. at 178-179. Rather, the Court stated, "[a]n employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to occur." *Id*. at 179.

Finally, the *Travis* Court concluded as follows:

> Thus, in order to effect the intent of the Legislature, we would hold that the second sentence of the intentional tort exception is one means of proving the specific intent to injure element of the first sentence. Under the second sentence, an employer may be deemed to have intended to injure if he has actual knowledge that an injury is certain to occur, yet disregards that knowledge.

> If we read both sentences of the intentional tort exception together, it becomes evident that an employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent. The second sentence then allows the employer's intent to injure to be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge. [*Id*. at 180.]

Because the present case does not involve direct evidence of an intent to injure on the part of SWM, the trial court correctly applied the second sentence in an effort to determine SWM's

intent. The court concluded that plaintiffs had failed to present evidence that SWM had actual knowledge that an injury was certain to occur. The court acknowledged that an employer's knowledge that a dangerous condition exists will not suffice and that the dispositive question was whether SWM knew that an injury was certain to result from the specific dangers alleged.

Although the evidence supported the trial court's conclusion that the warehouse was not a safe environment for SWM's workers, the testimony of Praveen Kothakota, Crystal Russo, Atul Datta, and Anil Sethi failed to indicate that SWM's owners and managerial employees had actual knowledge that injuries were certain to occur because of their deliberate actions or inaction regarding the configuration of the A-frame storage racks in the warehouse and the storage and handling of stone slabs.[2] The present case is therefore distinguishable from the cases that our Supreme Court discussed in *Travis*. For example, citing its earlier decision in *Beauchamp*, 427 Mich at 23-24, the *Travis* Court opined that the employer's actions in *People v Film Recovery Sys*, 194 Ill App3d 79; 550 NE2d 1090 (1990), constituted an intent to injure its employees. *Travis*, 453 Mich at 177-178. In that case, the defendant employer deliberately exposed its employees to dangerous fumes and hired only employees who were unable to read warning labels warning of the dangers of inhaling the fumes. *Id*. The *Travis* Court stated as follows:

> When an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury is certain to occur. [*Id*. at 178.]

In another case discussed in *Travis*, the defendant employer ordered the plaintiff employees to scrub a floor free of toxic levels of polychlorinated biphenyls (PCBs), which hazardous waste specialists could not fully remove from the floor of the plant, and failed to provide the employees with protective clothing. *Id*. at 175, citing *Gulden v Crown Zellerbach Corp*, 890 F2d 195 (CA 9, 1989). The court in that case determined that the plaintiffs had presented evidence that the defendant was aware that the plaintiffs would suffer the injuries that they ultimately suffered, but nevertheless ordered them to clean the area in a manner that required them to maintain contact with the dangerous toxins. *Id*. at 176, citing *Gulden*, 890 F2d at 197. The *Travis* Court stated that those facts "would constitute allegations of certainty of injury under the Michigan statute." *Id*.

The facts of this case indicate that SWM's owners and managerial employees were aware that the stone slabs were stored in a dangerous manner and that the warehouse was overcrowded, which could lead to accidental injury if the stone slabs were not handled properly. However, unlike *Gulden* and *Film Recovery Sys*, SWM's employees acknowledged that working in the stone industry is itself dangerous, they were aware of the potential for injury because of the overstocked condition of the warehouse, and the evidence does not lend itself to a conclusion that SWM's owners and managerial employees had actual knowledge that an injury was certain to result from

---

[2] Because the trial court determined that plaintiffs failed to present evidence indicating that SWM had actual knowledge that an injury was certain to occur, the court did not reach the issue of whether SWM disregarded that knowledge.

the manner in which the stone slabs were stored in the warehouse. Therefore, the trial court did not err by concluding that plaintiffs' exclusive remedy is under the WDCA.

### III. WRONGFUL-DEATH ACT

Plaintiffs also assert that the trial court erred by dismissing their claim under the Wrongful-Death Act (WDA), MCL 600.2922 *et seq*. We disagree.

MCL 600.2922(1) provides:

> (1) Whenever the death of a person, injuries resulting in death, or death as described in [MCL 600.2922a] shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in [MCL 600.2922a], and although the death was caused under circumstances that constitute a felony.

MCL 600.2921 states that "[a]ll actions and claims survive death." The provision further states, "[a]ctions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to" the WDA.

In *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 88; 746 NW2d 847 (2008), our Supreme Court acknowledged Michigan caselaw stating that the WDA "is essentially a 'filter' through which the underlying claim may proceed." The *Wesche* Court further stated, "[b]ecause an underlying claim 'survives by law' and must be prosecuted under the wrongful-death act, this Court has held that any statutory or common-law limitations on the underlying claim apply to a wrongful-death action." *Id.* at 89. Relying on its previous decision in *Maiuri v Sinacola Constr Co*, 382 Mich 391, 392; 170 NW2d 27 (1969), the *Wesche* Court acknowledged that the exclusive-remedy provision of the WDCA is a statutory limitation applicable to a WDA claim. The Court stated as follows:

> Since the cause of action of a proper plaintiff under the wrongful death act is a derivative one in that the personal representative of the deceased stands in his shoes and is required to show that the deceased could have maintained the action if death had not ensued, and since, in this case, the decedent would have been barred from an action for injuries resulting in death because of the exclusive remedy provisions of the workmen's compensation act, the trial court did not err in granting an accelerated judgment for the defendant. [*Wesche*, 480 Mich at 90-91, quoting *Maiuri*, 382 Mich at 396.]

Similarly, in the instant case, because the trial court did not err by granting summary disposition in SWM's favor on the basis of the exclusive-remedy provision of the WDCA, the trial court likewise properly dismissed plaintiffs' WDA claim premised on the WDCA.

## IV. PLAINTIFFS' NEGLIGENCE CLAIM AGAINST THE FLORIDA DEFENDANTS

Finally, plaintiffs argue that the trial court erred by dismissing their ordinary negligence claim against the Florida defendants on the basis that plaintiffs abandoned that claim in the trial court. The trial court determined that plaintiffs abandoned their negligence claim because, in response to the Florida defendants' motion for summary disposition, plaintiffs merely announced that their claim was a negligence claim and not a premises-liability claim, as the Florida defendants argued in their motion. The court stated that plaintiffs failed to cite to allegations in their third amended complaint to establish that the claim was a negligence claim and abandoned the claim by failing to address the merits of the Florida defendants' argument.

On appeal, plaintiffs assert that, "[c]ontrary to the lower court's decision," they adequately pleaded a negligence claim against the Florida defendants in their third amended complaint. Plaintiffs also identify which paragraphs in their third amended complaint they maintain alleged their negligence claim. The trial court did not dismiss plaintiff's claim on the basis that plaintiffs failed to adequately plead the claim, however, but rather, the court dismissed the claim on the basis that plaintiffs failed to provide legal argument in opposition to the Florida defendants' assertion that the claim sounded in premises liability. By failing to address the basis of the trial court's decision, plaintiffs have abandoned their claim of error on appeal. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) ("When an appellant fails to dispute the basis of the trial court's ruling, this Court . . . need not even consider granting plaintiffs the relief they seek.") (Quotation marks, brackets, and citation omitted; ellipsis in original). Accordingly, plaintiffs are not entitled to relief.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan