*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHAN ROACH,

        Plaintiff-Appellant,

v

DETROIT COMMUNITY SCHOOLS, FELICIA
JONES, PATRICIA PEOPLES, WILLIAM
COLEMAN, LILLIE RILEY, ANTHONY
WAGNER, NANCY BERKOMPAS, and
KETURAH GODFREY,

        Defendants-Appellees,

and

ECHELLE JORDAN,

        Defendant.

UNPUBLISHED
April 21, 2022

No. 357448
Wayne Circuit Court
LC No. 19-009703-NZ

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants Detroit Community Schools (DCS), Felicia Jones, Patricia Peoples, William Coleman, Lilly Riley, Anthony Wagner,[1] Nancy Berkompas, Echelle Jordan, and Keturah Godfrey, in this

---

[1] Jones, Peoples, Coleman, Riley, and Wagner, like plaintiff, are all employed by MM1, Inc. (MM1). Thus, we will refer to Jones, Peoples, Coleman, Riley, and Wagner collectively as the "MM1 defendants." When necessary, we will refer to the MM1 defendants individually by their respective last names. Although Keturah Godfrey was also an employee of MM1, she had a separate attorney from the other MM1 employees and, therefore, for clarity's sake, we will refer to her as Godfrey when appropriate. As will be discussed, Echelle Jordan was, at some point,

-1-

action alleging gross negligence, premises liability, nuisance per se, nuisance in fact, and negligent infliction of emotional distress. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case concerns mold in a classroom that allegedly caused injuries to plaintiff and defendants' alleged failure to remedy that issue. As a preliminary matter, it is helpful to understand the role of each party in this case. DCS is a public school academy located in Detroit, Michigan. Plaintiff was a history teacher during the 2018-2019 school year at what is referred to as the DCS middle school facility. That school year went from September 2018 through June 2019. The MM1 defendants were plaintiff's co-employees. Godfrey, Berkompas, and Jordan were also plaintiff's co-employees. Jones was the principal of DCS;[2] Peoples was the Human Resources Director for DCS; Coleman was Chief Financial Officer for DCS; Riley was head of security and maintenance at DCS; and Wagner was the Director of Information Technology for DCS. Godfrey was headmaster of DCS. Additionally, Berkompas was appointed as conservator for DCS in early October 2018 by Bay Mills Community College, the charter school authorizer for DCS, and was subsequently approved to serve as superintendent of DCS in late July 2019.

Plaintiff alleged that DCS's failure to maintain the roof and ceiling at the middle school facility caused water to leak into his classroom and resulted in mold and mildew in the ceiling. Plaintiff lodged several complaints with DCS and some of the individual defendants, informing them of the smell of mold and mildew in his classroom and, eventually, the effect it was having on his health. Near the end of the 2018-2019 school year, plaintiff obtained samples of the mold and had a mold identification report prepared. Although the report indicated that mold was present in plaintiff's classroom, there is no evidence this report was ever provided to defendants.

In mid-July 2019, plaintiff filed a five-count complaint against defendants. Of the five claims in plaintiff's complaint, only one applied to every defendant, while all five claims applied to DCS. Specifically, plaintiff maintained a claim of gross negligence against every defendant. With respect to DCS, plaintiff alleged, in addition to the gross-negligence claim, claims of (1) premises liability, (2) nuisance per se, (3) nuisance in fact, and (4) negligent infliction of emotional distress. In early August 2019, DCS hired a company to investigate the mold situation in the middle school facility, a report was prepared detailing the findings of that investigation, and, in September 2019, DCS had the mold issue remedied.

DCS and the MM1 defendants moved for summary disposition of plaintiff's complaint under MCR 2.116(C)(4), (C)(7), (C)(8), and (C)(10). DCS and the MM1 defendants argued: (1) the exclusive-remedy provision of the Workers' Disability Compensation Act of 1969 (WDCA), MCL 418.101 *et seq*., barred plaintiff's claims against the individual defendants and the

---

principal of DCS, but we were unable to determine whether she was also an employee of MM1. Nancy Berkompas was appointed conservator of DCS by Bay Mills Community College, the charter school authorizer for DCS, and subsequently approved to serve as superintendent of DCS.

[2] It appears Jordan was also principal of DCS, and because plaintiff did not serve the complaint on Jordan, under MCR 2.102(E)(2), the dismissal of plaintiff's claim against Jordan was automatic.

intentional-tort exception did not apply; (2) plaintiff's claims against DCS were barred by governmental immunity; and (3) plaintiff's claims for premises liability, nuisance per se, nuisance in fact, and negligent infliction of emotional distress were subject to dismissal for various reasons not particularly relevant to this appeal. Berkompas seemingly concurred with the arguments in the dispositive motion of DCS and the MM1 defendants, asserting that she too was entitled to summary disposition on governmental immunity grounds. Godfrey also requested summary disposition, relying on the exclusive-remedy provision of the WDCA.

Plaintiff responded, asserting that the exclusive-remedy provision did not bar his claims because defendants had committed an intentional tort by willfully disregarding his complaints regarding the mold in his classroom and its effect on his health. Plaintiff also asserted, in relevant part, that there was a question of fact regarding whether DCS (a governmental agency) was grossly negligent when it disregarded his complaints. After a reply from DCS and the MM1 defendants, the trial court held that the exclusive-remedy provision barred plaintiff's claims against the individual MM1 defendants, Berkompas, and Godfrey, and plaintiff had not satisfied the requirements of the intentional-tort exception. The trial court also concluded that governmental immunity barred plaintiff's claims against DCS. This appeal followed.

## II. EXCLUSIVE-REMEDY PROVISION OF THE WDCA AND INTENTIONAL-TORT EXCEPTION

Plaintiff argues that the trial court erred by concluding that the exclusive-remedy provision of the WDCA barred his claims against the MM1 defendants, and defendants Godfrey and Berkompas, because he established the applicability of the intentional-tort exception to the exclusive-remedy provision. We disagree.[3]

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A claim regarding the WDCA's exclusive remedy provision "necessarily constitutes a challenge to the trial court's subject matter jurisdiction." *Harris v Vernier*, 242 Mich App 306, 313; 617 NW2d 764 (2000). A party may move for summary disposition under MCR 2.116(C)(4) if "[t]he court lacks jurisdiction of the subject matter." "When [re]viewing a motion under MCR 2.116(C)(4), this Court must determine whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact." *Cork v Applebee's of Mich, Inc*, 239 Mich App 311, 315; 608 NW2d 62 (2000). A genuine issue of material fact exists if reasonable minds could differ on the issue. *Johnson v Detroit Edison Co*, 288 Mich App 688, 695; 795 NW2d 161 (2010).

Under MCL 418.131(1), the WDCA provides the exclusive remedy for an injured worker against his or her employer. *McQueer v Perfect Fence Co*, 502 Mich 276, 286-287; 917 NW2d

---

[3] For the purposes of our discussion, we assume without deciding that plaintiff is correct to implicitly suggest that an employee's supervisors may be liable for a workplace injury to the same extent as the employer itself.

584 (2018). The only exception to the exclusive-remedy provision is when an employer commits an intentional tort. *Johnson*, 288 Mich App at 696. In full, MCL 418.131(1) states:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

"[T]he exclusive remedy provision of the WDCA limits the liability of the employer and provides statutory compensation for employees regardless of fault." *Pro-Staffers, Inc v Premier Mfg Support Servs, Inc*, 252 Mich App 318, 323; 651 NW2d 811 (2002).

In *Travis v Dreis and Krump Mfg Co*, 453 Mich 149, 180; 551 NW2d 132 (1996), our Supreme Court explained that MCL 418.131(1) provides "a rigorous threshold for a claim of intentional tort." To satisfy the threshold, a plaintiff must either provide direct evidence of an employer's intent to injure, or if "there is no direct evidence of intent to injure," then "intent must be proved with circumstantial evidence." *Id*. at 173. To prove intent with circumstantial evidence, a plaintiff must establish "actual knowledge" of an injury that was "certain to occur" and that the employer "willfully disregarded." *Id*. To establish "actual knowledge," a plaintiff must demonstrate "that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Id*. at 174. The "certain to occur" requirement is "an extremely high standard," and requires that "no doubt exist[] with regard to whether it will occur." *Id*. Finally, an employer engages in "willfull[] disregard[]" when it "disregards actual knowledge that injury is certain to occur" or fails to act to protect a person who is certain to be injured. *Id*. at 178-179.

Together, the requirements articulated in *Travis* require a plaintiff to demonstrate that the defendant "conscious[ly] cho[se] to injure an employee" and "deliberately acted or failed to act in furtherance of that intent." *Id*. at 180. "[I]ntent to injure [may] be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge." *Id*.

Simply put, a plaintiff must allege that the defendant specifically intended to injure the plaintiff or had actual knowledge that an injury was certain to occur. *Gray v Morley*, 460 Mich 738, 744; 596 NW2d 922 (1999). Allegations that merely suggest the defendant acted recklessly or with deliberate indifference "sound in gross negligence and are therefore insufficient to constitute an intentional tort within the meaning of the WDCA." *Id*.

In this case, the trial court concluded that plaintiff failed to allege that the MM1 defendants and defendants Godfrey and Berkompas committed intentional acts and had alleged a claim of gross negligence against them. Indeed, under his gross-negligence claim, plaintiff asserted that defendants "assumed a duty to act with ordinary care for the safety of" employees, contractors,

students, and others, with respect to maintenance of the middle school's roof and ceilings, and had breached their duties to plaintiff by "acting with negligence and/or reckless and wanton misconduct." Specifically, plaintiff alleged that defendants failed to train, manage, and control its employees or agents; provide instruction regarding the proper maintenance of the roof and ceilings; hire individuals qualified to address the issues related to the roof and ceilings; allowed its employees and agents to "engage in negligent and willful, wanton, and reckless behavior while acting on behalf of" DCS; and failed to exercise reasonable care. Additionally, plaintiff alleged that "[d]efendants' willful disregard of the obligation to maintain" the roof and ceiling in a safe condition "reflect[ed] a disregard of the substantial risk of an unmaintained work environment." Moreover, plaintiff alleged that "[d]efendants' conduct, which [he claims] proximately caused [p]laintiff's injuries and damages, was grossly negligent because it demonstrated a wanton and reckless disregard, and substantial lack of concern, for whether" plaintiff or other similar individuals "would suffer damages." Plaintiff also alleged that "[a]s the proximate cause of [d]efendants' gross negligence and willful, wanton conduct," plaintiff suffered various injuries.

The trial court properly concluded that plaintiff failed to allege any intentional acts by the MM1 defendants or defendants Godfrey and Berkompas that would establish the intentional-tort exception to the exclusive-remedy provision. The only claim against the individual defendants is entitled "Gross Negligence" and it sounds purely in gross-negligence terms. Further, allegations of only gross negligence are "insufficient to constitute an intentional tort within the meaning of the WDCA." *Gray*, 460 Mich at 742. Thus, plaintiff's sole remedy for any claims of gross negligence against the MM1 defendants and defendants Godfrey and Berkompas rests with the WDCA.

Plaintiff's argument, that his gross-negligence claim establishes the intentional-tort exception, also fails because he fails to allege that the MM1 defendants or defendants Godfrey and Berkompas intended to injure him. Although plaintiff alleges that these defendants "had actual knowledge of the defects and intentionally disregarded numerous complaints regarding the same," plaintiff failed to plead facts establishing that these defendants specifically intended to injure him or had actual knowledge that an injury was certain to occur. See *id*. at 744. Indeed, plaintiff did not plead any facts establishing any of the requirements articulated in *Travis*, i.e., that these defendants had actual knowledge of an injury that was certain to occur that the employer willfully disregarded. *Travis*, 453 Mich at 173. Rather, plaintiff's allegation about actual knowledge was with regards to knowledge of the *defects* in his classroom, not actual knowledge of an *injury* that was certain to occur, as required by *Travis*. *Id*. Accordingly, the allegations in plaintiff's complaint do not suggest that these defendants actually knew that plaintiff's alleged injuries were certain to occur as a result of any failure to fix the roof and ceiling at the middle school facility.

To the extent that plaintiff relies on the continuously operative dangerous condition doctrine to establish the existence of an intentional tort, that reliance is misplaced. To establish an intentional tort under that doctrine, plaintiff had to establish that these defendants had "knowledge of the condition and refrain[ed] from informing [plaintiff] about it." *Luce v Kent Foundry Co*, 316 Mich App 27, 35; 890 NW2d 908 (2016) (emphasis omitted). That is, "[t]he key is that the employee is left in the dark about the danger he or she will encounter and is therefore unable to take steps to keep from being injured." *Id*. (quotation marks and citation omitted). But in this case, plaintiff specifically alleged that he was aware of the hazardous conditions in his classroom and had complained to defendants about those conditions. Accordingly, any reliance by plaintiff

on the continuously operative dangerous condition doctrine is inappropriate. Thus, the trial court properly held that the exclusive-remedy provision of the WDCA barred plaintiff's claims against the MM1 defendants, and defendants Godfrey and Berkompas, and the intentional-tort exception under MCL 418.131(1) does not apply.

### III. GOVERNMENTAL IMMUNITY

Plaintiff argues that the trial court erred when it granted summary disposition of plaintiff's claims against DCS on the basis of governmental immunity because there was a question of fact regarding whether DCS grossly negligent and, therefore, the issue should have been left to the jury. We disagree.[4]

This Court reviews de novo the applicability of governmental immunity as a question of law. *McLean v McElhaney*, 289 Mich App 592, 596; 798 NW2d 29 (2010). A trial court's grant of summary disposition under MCR 2.116(C)(7) is also reviewed de novo. See *id*. "Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred by immunity granted by law." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432; 824 NW2d 318 (2012).

Under MCL 380.503(8), "[a] public school academy and its incorporators, board members, officers, employees, and volunteers have governmental immunity as provided in section 7 of 1964 PA 170, MCL 691.1407." "A public school academy is a body corporate and is a governmental agency." MCL 380.501(1). Under MCL 691.1407(1), "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." "To overcome governmental immunity for tort liability, then, plaintiff[] . . . must either (1) plead a tort that falls within one of the . . . stated exceptions, or (2) demonstrate that the alleged tort occurred outside the exercise or discharge of a governmental function." *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 327; 869 NW2d 635 (2015) (footnotes omitted). "The statutory exceptions contained in the [Governmental Tort Liability Act (GTLA)] are: (1) the highway exception, MCL 691.1402, (2) the motor vehicle exception, MCL 691.1405, (3) the public building exception, MCL 691.1406, (4) the governmental hospital exception, MCL 691.1407(4), (5) the proprietary function exception, MCL 691.1413, and (6) the sewage system event exception, MCL 691.1417." *In re Bradley Estate*, 494 Mich 367, 378 n 21; 835 NW2d 545 (2013).

Absent from the list of statutory exceptions to governmental immunity for a governmental agency is gross negligence. The gross-negligence exception is set forth in MCL 691.1407(2), which provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a

---

[4] Given the procedural posture of this case, in which defendants did not argue that the claims against DCS were subject to the exclusive-remedy provision of the WDCA, we separately address governmental immunity with respect to that defendant.

governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Under MCL 691.1407(8)(a), gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Although questions regarding whether conduct constituted gross negligence for purposes of governmental immunity are generally questions of fact for the jury, "if reasonable minds could not differ, summary disposition may be granted." *Wood v Detroit*, 323 Mich App 416, 424; 917 NW2d 709 (2018).

On appeal and to support his arguments regarding the gross-negligence exception to governmental immunity, plaintiff relies on allegations in his complaint that reference both DCS and its "authorized agents and representatives as named and identified" in the complaint. Accordingly, it appears that plaintiff argues that the gross negligence of both DCS and its agents, i.e., the individual defendants, deprives them of their statutorily-granted governmental immunity.

To the extent plaintiff argues that MCL 691.1407(2)(c) permits liability for a governmental entity's gross negligence, he is mistaken. It is clear from the language of MCL 691.1407(2)(c) that the statute only permits liability against the individual actor, not the governmental entity. See *Yoches v Dearborn*, 320 Mich App 461, 476; 904 NW2d 887 (2017) ("Although Subsection (2)(c) establishes an exception to the grant of immunity to an officer or employee of a governmental agency, it does not provide that a governmental agency otherwise entitled to immunity can be vicariously liable for the officer's or employee's gross negligence."). Therefore, to the extent plaintiff argues that the allegations of gross negligence by the individual defendants in his complaint deprived DCS of governmental immunity, that argument is without merit.

In any event, we note that reasonable minds could not differ regarding whether the conduct of the individual defendants constituted gross negligence and, therefore, summary disposition would be appropriate to DCS and the individual defendants on this alternate basis as well. See *Wood*, 323 Mich App at 424.

Plaintiff relies on six pieces of evidence to support his argument that there was a factual issue regarding whether conduct by DCS and the individual defendants was grossly negligent and precluded summary disposition. Those exhibits are: (1) the mold identification report prepared for plaintiff regarding samples taken on April 10, 2019, and received on April 15, 2019; (2) the water damage and mold assessment report dated August 16, 2019, after an investigation on August 9, 2019, and prepared for Coleman at DCS; (3) a copy of notices regarding mold and mildew plaintiff

apparently sent to DCS or an administrator of DCS; (4) what appears to be answers to interrogatories from DCS and the MM1 defendants; (5) an estimate and contract for mold remediation dated September 4, 2019, and scheduling work for September 6, 2019, as well as two signed estimates for roofing work, one dated August 30, 2019, and the other dated September 14, 2019; and (6) a screenshot of a group text message with plaintiff, Jordan, and Riley, dated September 21, 2018, approximately a year before the mold remediation work was completed.

As an initial matter, plaintiff's Exhibit I on appeal—the group text message with plaintiff, Jordan, and Riley dated September 21, 2018—was not presented below and, thus, was not considered by the trial court. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Therefore, we decline to consider the group text message between plaintiff, Jordan, and Riley dated September 21, 2018 in our review of this issue.

The evidence plaintiff presented below did not establish a factual dispute regarding whether the individual defendants were grossly negligent. The mold identification report, which tested samples taken on April 10, 2019, shows that plaintiff's classroom indeed had mold inside it. But it is not clear when defendants were made aware of the results of the mold identification report, if ever. Indeed, in none of plaintiff's communications with defendants regarding the mold did he mention that he had taken samples of the mold, sent it to a mold "expert," and received a report regarding the presence of mold. Rather, plaintiff's communications with defendants regarding the mold, respectively dated April 11, 2019, May 9, 2019, and June 11, 2019, mentioned a "musty," moldy, or mildew smell, and the fact he was suffering from headaches, a sore throat, and runny nose, but made no mention of the mold identification report. So, while plaintiff's communications with defendants may have indicated that his classroom *smelled* like mold, his communications do not establish that he actually conveyed the results of the mold identification report to defendants. Similarly, the partial answers to interrogatories simply demonstrate the same as the notices sent to defendants—that he notified DCS, Riley, and Wagner of the smell in his classroom between April 2019[5] and June 2019, but not necessarily the actual results of the mold inspection he had conducted. Plaintiff's infrequent messages regarding the moldy smell in his classroom, without evidence that the results of the mold identification report were shared with defendants, are insufficient to establish that the conduct of the individual defendants was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

Nor is a finding of gross negligence supported by the fact an investigation of the roof and ceiling for mold and mildew at DCS's request did not occur until August 9, 2019, with a report subsequently prepared on August 16, 2019. The 2018-2019 school year went from September 2018 to June 2019, so the fact the investigation was not done until early August 2019—only two months after the school year ended and plaintiff's latest report regarding mold in his classroom—

---

[5] Wagner's answer to the interrogatories indicates that plaintiff's notices were made "[a]fter April[] 2018." This appears to be a typographical error and should have read April 2019, *not* April 2018. Plaintiff did not begin teaching at DCS until the start of the 2018-2019 school year, which began in September 2018.

does not support a finding that defendants lacked concern "about the safety or welfare" of the occupants of the middle school facility. See *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004) (explaining that "if an objective observer watched the actor, [and] he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge," then gross negligence has occurred). Rather, coupled with the fact that there was no evidence defendants were made aware of the results of the mold identification report, and only knew of the mold and mildew *smell* in his classroom, plaintiff's reliance on the water damage and mold assessment report to support his claim of gross negligence is misplaced. Similarly, the fact the mold remediation was not completed until early September 2019 does not support a finding that defendants lacked concern "about the safety or welfare" of the occupants of the middle school facility. *Id*.

Without evidence that the mold identification report was actually presented to defendants, the only evidence notifying them of the potential presence of mold and mildew at the middle school facility was plaintiff's sporadic messages regarding the smell of mold and mildew in his classroom. In his April 11, 2019 message, he indicated that his classroom "smells like MOLD and MILDEW every day" and asked whether his ceiling would ever be "permanently fixed[.]" In his May 9, 2019 message, he again noted the musty, moldy smell in his classroom, indicating for the first time (at least as far as the evidence shows) that he had a sore throat and daily headaches. And in his June 11, 2019 message, presumably near the end of the 2018-2019 school year, plaintiff stated that the "mold in [his] class[room] is making [him] sick," including headaches, sneezing, and a runny nose, that his classroom "smell[ed] horrible," and that he had previously sent "a few requests to address this" but "never had a response." But again, the fact that plaintiff notified defendants of the *smell* of mold and mildew in his classroom does not mean defendants engaged in "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results" by not having an investigation conducted until August 2019, and the remediation being completed in early September 2019. MCL 691.1407(8)(a). As noted earlier, there is no evidence plaintiff informed defendants of the results of the mold identification report prepared for him seemingly around April 2019. Indeed, that report does not even indicate when it was completed—it indicates the sample date was April 10, 2019, and that the sample was received April 15, 2019, but the report itself is undated. And although he notified defendants about the mold smell in his classroom, he did so sporadically—once a month from April 2019 to June 2019.

Given all the evidence submitted by plaintiff, an objective observer watching the individual defendants could not reasonably conclude that they lacked concern about the safety or welfare of the students and staff at the DCS middle school facility. Instead, the evidence shows that after receiving sporadic complaints from plaintiff regarding the moldy smell in his classroom, DCS had a mold investigation conducted at the middle school facility, seemingly over summer break, and, within a month of receiving the results of that investigation, had the issue remedied. Even if the individual defendants were made aware of the results of the mold identification report prepared for plaintiff regarding samples taken and received in April 2019, and there is no evidence they were, the four-month span between when that sample was taken and the investigation conducted on behalf of DCS was completed is not dispositive on the issue of gross negligence and plaintiff has not demonstrated how such conduct qualifies as grossly negligent. Accordingly, there is no factual dispute regarding whether the individual defendants were grossly negligent and the trial

court did not err when it granted summary disposition of plaintiff's claims against DCS on the basis of governmental immunity, assuming that vicarious liability could apply in this context.[6]

## IV. PREMATURITY OF SUMMARY DISPOSITION

Plaintiff argues that the trial court erred when it failed to allow him to engage in meaningful discovery to support his claims against defendants. We disagree.

Generally, an issue must be raised in or decided by the trial court for it to be preserved for appeal. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). The issue regarding prematurity of summary disposition was not raised in or decided by the trial court. Therefore, the issue is unpreserved for appellate review. See *id*. In any event, plaintiff's argument in this regard is meritless.

Summary disposition is premature if it is granted before discovery is completed on a disputed issue. *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020) (citation omitted). A party may not, however, "simply allege that summary disposition is premature." *Id*. Instead, "[t]he party must clearly identify the disputed issue for which it asserts discovery must be conducted and support the issue with independent evidence." *Id*. "The dispositive inquiry is whether further discovery presents a fair likelihood of uncovering factual support for the party's position." *Id*. (quotation marks and citation omitted).

Plaintiff does not identify any disputed issue for which he claims discovery must be conducted, and he has failed to demonstrate that further discovery presents a fair likelihood of uncovering factual support for his position. Indeed, plaintiff concedes that "[r]egardless" of his outstanding document request for "relative documents [that] remained in the sole possession and control of" DCS, he had already "illustrated" through documents available when he filed his response to summary disposition, and his brief on appeal, that he had "actually made [defendants] aware of the hazardous condition in his classroom . . . ." Plaintiff asserts, however, that the trial court "failed, refused, and/or neglected to consider the evidence presented." And regarding his claim that summary disposition was inappropriate when there existed a question of fact regarding "whether an exception applies," plaintiff asserts that there were "[c]ertainly . . . issues of fact" warranting "continuing to the conclusion of discovery and to trial" regarding whether "the acts and omissions of [defendants] amounted to gross negligence . . . ." Further, plaintiff asserted that the facts in his complaint "raised questions of fact to be decided solely by a finder of fact, and as such," the trial court erred "by taking this decision into its own hands and ruling that [plaintiff] had not presented facts worthy of meeting the threshold for gross negligence."

---

[6] To the extent that plaintiff challenges the trial court's rulings regarding his claims for premises liability, nuisance per se, nuisance in fact, and negligent infliction of emotional distress, after review, we conclude that the trial court properly dismissed those claims on the basis of governmental immunity. The allegations of these four claims relate to the exercise and discharge of a governmental function, i.e., management and maintenance of the school premises. Thus, DCS is entitled to governmental immunity related to these claims. MCL 691.1407(1).

Plaintiff's argument that summary disposition was prematurely granted is unavailing. First, plaintiff acknowledged that he possessed documents supporting his claim, namely, documents that show he had given defendants notice of the hazardous conditions in his classroom. Second, plaintiff does not establish how further discovery "present[ed] a fair likelihood of uncovering factual support" for his position. *Powell-Murphy*, 333 Mich App at 253 (quotation marks and citation omitted). Third, plaintiff does not identify any specific issue that requires further discovery. Instead, as DCS and the MM1 defendants note, plaintiff "summarily argues that the trial court should not have granted summary disposition where a factual question remained regarding whether [d]efendants' conduct amounted to gross negligence." Taken together, plaintiff's arguments on appeal regarding the prematurity of summary disposition fail to establish that there exists a fair likelihood further discovery would allow him to establish a question of fact. Accordingly, summary disposition was not prematurely granted.

## V. CONCLUSION

The trial court correctly granted summary disposition in favor of defendants. We affirm.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan

-11-