*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SHAUNTANIQUE BROWN, Personal
Representative of the ESTATE OF LORRAINE
FAISON,

                    Plaintiff-Appellant,

v

BURLINGTON COAT FACTORY OF TEXAS,
INC., and BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION, doing business as
BURLINGTON COAT FACTORY,

                    Defendants-Appellees.

UNPUBLISHED
September 22, 2022

No.  357119
Wayne Circuit Court
LC No.  20-011978-NO

Before:  M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this wrongful death action, plaintiff, personal representative for the estate of Lorraine Faison, appeals as of right the trial court's order granting summary disposition to defendants under MCR 2.116(C)(8).  On appeal, plaintiff argues that the trial court erred by concluding that she had failed to state a claim for an intentional tort under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*.  And even if she did fail to state a claim, plaintiff argues, the trial court abused its discretion by not allowing her to amend her complaint.  We conclude that plaintiff failed to state a claim for an intentional tort, and affirm the trial court's order granting defendants' motion for summary disposition.  But we remand to the trial court to allow plaintiff to file a motion for leave to amend her complaint.

## I.  FACTS

Plaintiff initiated this action alleging that defendants were liable for the shooting death of decedent Lorraine Faison, who was employed at a Burlington Coat Factory store and was shot at work by her coworker, Sandra Waller.  Plaintiff alleged in her complaint that, on October 15, 2017, Waller and decedent "began to argue about the proper way to scan the aisles" of defendants' store. The argument escalated, and decedent alerted the assistant store manager, Nicole Good.  Waller

-1-

told Good that, about three months ago, she and decedent had a similar argument. Good instructed Waller to return to work but to move to another department away from decedent. But after Waller had returned to work, Waller "continued yelling at and engaging in otherwise belligerent behavior with [decedent]." In response to this, Good told Waller and decedent to go home for the day. "Good remained with [decedent] while Waller went to the back of [defendants'] store to punch out, intending to keep the two women separated and prevent further escalation of the altercation."

Plaintiff alleged that defendants scheduled decedent and Waller to work another shift together the following day, on October 16, 2017. During that shift, Waller resumed the argument from the day before. At some point, Waller pulled out a handgun and shot and killed decedent.

As a result of decedent's death, plaintiff sued defendants for wrongful death and alleged that the WDCA's exclusive remedy provision did not apply to her claim because defendants had committed an intentional tort as defined under MCL 418.131. According to plaintiff, defendants deliberately scheduled decedent to work with Waller the day after the argument, specifically intending for Waller to injure plaintiff. In support of her allegation that defendants had specific intent to injure, plaintiff alleged that defendants "possessed actual knowledge that the workplace environment created by Waller was extremely dangerous such that injury was certain to occur to one or more of its employees, especially decedent," and that defendants willfully disregarded this certain danger by requiring decedent to work with Waller anyway. In lieu of filing an answer, defendants moved for summary disposition under MCR 2.116(C)(8), arguing that plaintiff failed to allege facts sufficient to state a claim for an intentional tort under the WDCA.

The trial court agreed with defendant. After a hearing on defendants' motion, the trial court dismissed plaintiff's claim, reasoning that plaintiff failed to sufficiently allege facts to support a claim for an intentional tort under the WDCA. This appeal followed.

## II. LEGAL SUFFICIENCY OF PLAINTIFF'S COMPLAINT

"This Court reviews de novo the grant or denial of a motion for summary disposition." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (citation omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160 (citation omitted). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. (citation omitted). "[T]he mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994). In the context of the intentional tort exception under the WDCA, whether the facts alleged by plaintiff are enough to constitute an intentional tort is a question of law for the court, and whether the facts are as plaintiff alleges is a question for the jury. *Gray v Morley*, 460 Mich 738, 742-743; 596 NW2d 922 (1999). This Court reviews de novo questions of law. See *Carter v Ann Arbor City Attorney*, 271 Mich App 425, 427; 722 NW2d 243 (2006) (citation omitted).

Under the WDCA, employers compensate employees for personal injuries suffered in the course of employment, regardless of fault. *Herbolsheimer v SMS Holding Co, Inc*, 239 Mich App

236, 240; 608 NW2d 487 (2000) (citation omitted); MCL 418.301. "In return for this almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer." *Clark v United Technologies Auto Inc*, 459 Mich 681, 687; 594 NW2d 447 (1999). One of these limited circumstances is when an employee can prove that the employer committed an intentional tort. *Johnson v Detroit Edison Co*, 288 Mich App 688, 696; 795 NW2d 161 (2010). MCL 418.131(1) defines what constitutes an intentional tort under the WDCA:

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

Thus, to show that her employer has committed an intentional tort, a plaintiff must show that the employer acted deliberately and specifically intended to injure her. *Johnson*, 288 Mich App at 696. A deliberate act may be one of commission or omission, and an employer acts with specific intent when the employer had a purpose to bring about certain consequences. *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 169, 170-171; 551 NW2d 132 (1996) (opinion by BOYLE, J.).

Accepted as true and construed in a light most favorable to plaintiff, the facts in plaintiff's complaint show that defendants acted deliberately. Plaintiff alleged that defendants required decedent to work with Waller the day after decedent's and Waller's argument, and neither party contends that defendants' doing so was an unintentional act. So, the remaining issue is whether defendants required decedent to work with Waller with the specific intent to injure decedent.

"A plaintiff can prove that a defendant had an intent to injure through circumstantial evidence if he establishes that (1) the employer has actual knowledge (2) that an injury is certain to occur (3) yet disregards that knowledge." *Luce v Kent Foundry Co*, 316 Mich App 27, 33; 890 NW2d 908 (2016) (citations omitted). Plaintiff argues that Good had actual knowledge that requiring decedent to work with Waller after decedent's and Waller's argument would result in Waller's injuring decedent.

" '[A]ctual knowledge' cannot be constructive, implied, or imputed; rather, a plaintiff must show that the employer had actual knowledge that an injury would follow from the employer's act or omission." *Johnson*, 288 Mich App at 697 (internal quotation marks and citation omitted). "In the case of a corporate employer, a plaintiff need only show that 'a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do.' " *Id*., quoting *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 714; 777 NW2d 205 (2009). An employer's knowledge that an injury was certain to occur does not require the employer to know that an injury will occur in a specific way, on a certain date, or to a particular employee. *Johnson*, 288 Mich App at 699.

Even when viewed in a light most favorable to plaintiff, the facts in plaintiff's complaint are insufficient to establish that defendants had actual knowledge that Waller would injure decedent. In her complaint, plaintiff alleged that Waller and decedent had an argument about the

proper way to scan aisles, that Waller and decedent had a similar argument about three months prior, that Waller continued the argument with decedent after Good had separated them, and that Good stood with decedent to keep her separated from Waller while Waller clocked out. Whether these facts are considered together or in isolation, they are insufficient. For starters, there are no allegations that Waller and decedent had any issues with each other in the three months between their first argument and the October 15, 2017, argument. Given that Waller and decedent had no issues with each other for months after the first argument, Good would have no substantial reason to think that requiring decedent to work a shift with Waller after the second argument would be of concern. More importantly, there was no allegation that either of decedent's and Waller's arguments ever resulted in physical harm to either party, that Waller ever threatened to physically harm decedent, that Waller had violent tendencies of which Good was aware, or that Waller had access to any sort of weapon. Cf. *LaDuke v Ziebart Corp*, 211 Mich App 169, 173-174; 535 NW2d 201 (1995). Simply put, plaintiff alleged no facts showing that Waller was dangerous or posed a physical threat to decedent.

Admittedly, plaintiff did allege that Good stood by decedent while Waller clocked out, which could suggest that Good was apprehensive about decedent's safety. Yet, even if this fact were enough to show that Good actually knew Waller would injure decedent, plaintiff's complaint is deficient for another reason: it fails to allege facts showing that injury was *certain* to occur.

"An injury is certain to occur if there is no doubt that it will occur . . . ." *Herman v Detroit*, 261 Mich App 141, 148; 680 NW2d 71 (2004). This certainty element "establishes an extremely high standard of proof that cannot be met by reliance on the laws of probability, the mere prior occurrence of a similar event, or conclusory statements of experts." *Palazzola v Karmazin Prod Corp*, 223 Mich App 141, 149-150; 565 NW2d 868 (1997) (internal quotation marks omitted). In *Travis*, our Supreme Court approved one type of circumstantial evidence that would satisfy this element:

> When an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury [was] certain to occur. [*Travis*, 453 Mich at 178 (opinion by BOYLE, J.)].

But plaintiff alleged no facts suggesting that Waller's presence in defendants' workplace was a continuously operative dangerous condition. Unlike a stamping press without safety equipment, *Fries*, 285 Mich App at 714-717, or a hot furnace loaded with wet scrap and aerosol cans, *Travis*, 453 Mich at 186 (opinion by BOYLE, J.), there is nothing to suggest that Waller was so inherently dangerous that every encounter with her bore the potential for injury. See *id*. ("Plaintiff does not contend that every load of scrap would have exploded, but that every load of scrap had the potential to explode because each load could have contained a closed aerosol can or water."); *Fries*, 285 Mich at 717 ("[E]very encounter here between a worker's loose clothing and the [stamping press's] finger control buttons inherently embodied the potential for inadvertent, unexpected cycling of the machine."). To reiterate, plaintiff alleged that decedent and Waller had only two verbal confrontations three months apart, and plaintiff's complaint indicates that, during those three months, decedent and Waller had no issues. And again, plaintiff alleged nothing

-4-

suggesting that Waller had any violent tendencies, that Waller wielded any weapons, or that Waller had threatened to harm decedent or anyone else. Altogether, the trial court correctly concluded that plaintiff failed to state a claim for an intentional tort under the WDCA.[1]

## III. AMENDMENT OF COMPLAINT

In plaintiff's response to defendants' motion for summary disposition, and at the hearing on defendants' motion for summary disposition, plaintiff requested that the trial court allow her to file an amended complaint should the trial court conclude she failed to state a claim. The trial court did not explicitly address plaintiff's request to amend her complaint. But as plaintiff points out on appeal, the trial court's ruling implies that it believed allowing plaintiff to amend her complaint would be futile. Specifically, the trial court stated, "I don't know care [sic] how you shape it; the employer didn't . . . ha[ve] actual knowledge that an injury was certain to occur, no way on God green—God's green earth, when you have two people working together, do you think after they had a disagreement about stocking shelves and working together that the other would bring in a gun and shoot the other woman in the chest."

On appeal, plaintiff argues that the trial court erred. We review a trial court's decision regarding a motion to amend the pleadings for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). In addition, "[t]his Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules." *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019).

"[A]mendment is generally a matter of right rather than grace." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006). Thus, "[a] trial court should freely grant leave to amend a complaint when justice so requires." *Wolfenbarger v Wright*, 336 Mich App 1, 19; 969 NW2d 518 (2021) (citation omitted); MCR 2.118(A)(2). A motion to amend should ordinarily be denied only for particularized reasons. *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007). A trial court does not abuse its discretion in denying a motion to amend if (1) the claimant has unduly delayed seeking to amend the complaint; (2) the claimant has exhibited bad faith or dilatory motive; (3) the claimant has repeatedly failed to cure deficiencies by amendments previously allowed; (4) the opposing party would be unduly prejudiced by allowing the amendment; or (5) the amendment would be futile. *Wolfenbarger*, 336

---

[1] Our dissenting colleague is of the opinion that we have implicitly employed the standards governing a motion under MCR 2.116(C)(10), rather than (C)(8). But we have not relied upon any documentary evidence in conducting this review, so (C)(10) was not employed. Instead, we have simply concluded under the standard governing (C)(8) motions, plaintiff's allegations (which we have of course accepted as true) do not, as a matter of law, arise to the high threshold for an intentional tort claim, which is permissible under the court rule and statute. Additionally, we have not held that plaintiff must show that defendant knew Waller would shoot the decedent; instead, we held that no allegations supported that defendant knew or should have known that Waller would have physically harmed the decedent.

Mich App at 19, citing *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).

To the extent that the trial court declined to allow plaintiff to amend her complaint on the grounds of futility, the trial court abused its discretion. This Court has held that a trial court cannot conclude that an amendment would be futile without first seeing the proposed amended complaint or claim. As stated in *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 139; 676 NW2d 633 (2003):

> In denying plaintiff's request to file a motion to amend its complaint, the trial court simply concluded that any amendment of plaintiff's complaint would be futile. While the better practice would have been for plaintiff to file a motion for leave to amend, we note that there was no basis for the trial court's decision in this instance. A determination of futility must be based on the legal insufficiency of the claim on its face. Because plaintiff had yet to identify the proposed claim, there was no basis for the trial court's determination that it was legally insufficient. Accordingly, the trial court abused its discretion in this regard. [*Id*. (footnote omitted)].

Like in *Liggett*, plaintiff never identified the facts she would allege in an amended complaint. As a result, the trial court could not say whether an amended complaint would be legally insufficient on its face. Further, even if the trial court denied plaintiff's request to amend her complaint for reasons other than futility, the trial court still abused its discretion. As this Court has held, the trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile. *PT Today*, *Inc*, 270 Mich App at 143.

The trial court's order granting defendants' motion for summary disposition is affirmed, but we remand to allow plaintiff an opportunity to file a motion for leave to amend her complaint. We do not retain jurisdiction, and no costs are awarded to either party.

/s/ Michael J. Kelly
/s/ Christopher M. Murray