*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROGELIO RUIZ,

        Plaintiff-Appellant,

v

BENTELER AUTOMOTIVE CORP, JENNIFER
PIOTROWICZ, and JOAN TALBOT,

        Defendants-Appellees.

UNPUBLISHED
January 18, 2024

No. 362051
Kalamazoo Circuit Court
LC No. 2018-000387-NP

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the trial court's order denying his motion to amend the complaint to include a claim of battery under a respondeat superior theory against defendant, Benteler Automotive Corp. We reverse and remand.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This appeal is the second time this case has been before this Court. In the earlier appeal to this Court, we summarized the underlying facts as follows:

> Plaintiff worked for Benteler as a contract employee before Benteler officially hired plaintiff on June 19, 2017. Three days later, plaintiff was involved in an accident in which a heavy bin fell on his foot, causing severe injury. Christy Elmer, a team leader and machine operator, attempted to assist plaintiff and then requested the help of Joan Talbot, a production unit leader whom Benteler identified as a first responder. Talbot moved plaintiff from the production floor using a wheelchair to the "tool crib"—an enclosed area that kept tools and first-aid materials. The amount of time that plaintiff spent in the tool crib is disputed along

---

[1] *Ruiz v Benteler Auto Corp*, unpublished order of the Court of Appeals, entered December 21, 2022 (Docket No. 362051).

with what occurred in the tool crib. However, it is undisputed that someone eventually called plaintiff a taxi, and Elmer and Talbot moved plaintiff to the plant's front lobby where he waited for the taxi.

The taxi eventually arrived and took plaintiff to Borgess clinic where he had to wait for assistance. After a doctor finally looked at plaintiff's foot, the doctor realized that plaintiff was in the wrong place and needed care in the emergency room. Plaintiff's bones were sticking out of his left, crushed foot, which was bleeding heavily. Hospital staff cut off plaintiff's boot, wrapped his foot, and sent him to the emergency room for x-rays. Some days later, plaintiff had surgery on his foot, and following recovery from the surgery, he was sent to Borgess Rehab Center where he stayed until September. In October, he was approved for light-duty work, and Benteler continued to employ him through its Off-Site Light Duty Program at a nonprofit. While plaintiff was working at the nonprofit, Benteler had to layoff over 30 employees on May 4, 2018, due to workforce reduction cuts. On May 15, 2018, plaintiff signed an Equal Employment Opportunity Commission (EEOC) charge of discrimination against Benteler. Plaintiff was cleared to return to full-duty work on June 15, 2018, but plaintiff never returned to his position at Benteler because Benteler laid him off on the day that he was permitted to return. [*Ruiz v Benteler Auto Corp*, unpublished opinion of the Court of Appeals, issued September 16, 2021 (Docket No. 353038), pp 1-2 (*Ruiz I*).]

Thereafter, plaintiff filed a complaint, alleging in relevant part, a claim of battery against Talbot.[2] After the trial court denied summary dismissal of this claim, defendants filed an interlocutory appeal to this Court. In upholding the trial court's denial of summary disposition of plaintiff's battery claim, we concluded:

The benefits that the WDCA provides are an employee's exclusive remedy against an employer or coworker for work-related personal injuries. MCL 418.131(1); *Johnson v Detroit Edison Co*, 288 Mich App 688, 695-696; 795 NW2d [161 (2010)]. "The only exception to this exclusive remedy is an intentional tort," which "shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury." MCL 418.131(1). "Thus, a plaintiff may recover from his employer where he establishes what is generally regarded as a 'true intentional tort,' that is, one in which the employer 'specifically intended an injury.' *Graham v Ford*, 237 Mich App 670, 673; 604 NW2d 713 (1999) (quotation marks and citation omitted).[] This also applies to alleged intentional torts committed by coworkers. *Id*. To establish a true

---

[2] Plaintiff made additional claims against all defendants in this case. These claims were: false imprisonment, intentional infliction of emotional distress (IIED), racial discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2201 *et seq.*, and violations of Michigan's Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. In *Ruiz I*, this Court concluded that the trial court should have granted summary disposition of these claims. *Ruiz I*, unpub op at 5-9.

intentional tort, "the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee." *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 172; 551 NW2d 132 (1996) (opinion by BOYLE, J.). "[W]hen the employer is a corporation, a particular employee must possess the requisite state of mind in order to prove an intentional tort." *Id*. at 171-172. Courts must "determine as a matter of law whether the plaintiff has alleged sufficient facts to sustain the intentional tort claim." *Johnson*, 288 Mich App at 696.

\* \* \*

> According to plaintiff, after the bin shattered his foot, Talbot repeatedly tried to force plaintiff to stand and walk using his shattered foot. She eventually got plaintiff a wheelchair and wheeled him into the tool crib. Plaintiff testified that in the tool crib, Talbot wanted to assess plaintiff's injury, but he told her not to touch his foot because it hurt. According to plaintiff, Talbot nevertheless tried to take his boot off, and the pain made plaintiff scream. Plaintiff testified that Talbot tried to take his boot off several more times—possibly up to 10 times—while plaintiff screamed and told her to stop.[]
>
> Viewing this evidence in the light most favorable to plaintiff, a reasonable juror could conclude that Talbot committed a battery and specifically intended an injury. According to plaintiff, he told Talbot not to touch his boot, but she did it anyway, and he screamed. Then she did it up to 10 more times, all while plaintiff was screaming and asking her to not grab his boot. From this—the evidence viewed in the light most favorable to plaintiff—a reasonable juror could conclude that Talbot committed a battery and specifically intended an injury as required by MCL 418.131(1).[] [*Ruiz I*, unpub op at 3-4 (footnotes omitted).]

This Court further noted: "Talbot's alleged boot pulling is the most clear-cut claim of battery, which is why it is addressed in this opinion. This opinion should not be read as foreclosing plaintiff from presenting other theories of battery." *Id*. at 4 n 5. Ultimately, this Court affirmed the trial court's order denying summary disposition of plaintiff's battery claim against Talbot. *Id*. at 9.

This case returned to the trial court where plaintiff moved to amend the complaint to include a battery claim against Benteler under a respondeat superior theory. The trial court denied the motion. Plaintiff moved for reconsideration, which the trial court also denied. This appeal followed.

## II. MOTION TO AMEND

Plaintiff argues the trial court abused its discretion in denying his motion to amend. We agree.

### A. STANDARD OF REVIEW

A trial court's decision on a motion to amend a pleading is reviewed for an abuse of discretion. *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 474; 986 NW2d 427 (2022). "[T]he appellate court must review the discretionary determination for an abuse of discretion and

cannot disturb the trial court's decision unless it falls outside the principled range of outcomes." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472; 719 NW2d 19 (2006). "A trial court necessarily abuses its discretion when it makes an error of law." *Kostadinovski v Harrington*, 511 Mich 141, 149-150; ___ NW2d ___ (2023) (quotation marks and citation omitted).

This case also involves issues of statutory interpretation, which this Court reviews de novo. *Id*. at 150. "When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature." *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

## B. LAW AND ANALYSIS

Under MCR 2.118(A)(2), "[l]eave shall be freely given when justice so requires." Courts generally have discretion to grant or deny a motion to amend, but "[l]eave to amend should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *In re Kostin*, 278 Mich App 47, 52; 748 NW2d 583 (2008). Defendants cited two reasons opposing plaintiff's motion to amend. First, they argued that amendment would cause undue delay; and second, they claimed the amendment was futile because Talbot's alleged actions were for her benefit and not her employer's. The viability of each of these arguments is discussed below.

### 1. UNDUE DELAY

"Delay, alone, does not warrant denial of a motion to amend." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997), 454 Mich at 659. "[A] court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Id*. " '[P]rejudice' exists if the amendment would prevent the opposing party from receiving a fair trial." *Id*. For example:

> [A] trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id*. at 659-660.]

Defendants claimed below that they would be prejudiced were the trial court to grant the motion to amend. They argued that plaintiff could have raised a battery claim against Benteler "at the beginning of the case . . . but deliberately chose not to do so . . . ." They noted that discovery had closed, Benteler had sold the plant where the accident occurred, and, after an appeal to this Court, all claims against Benteler were dismissed.

Contrary to these assertions, one of the prerequisites of actual prejudice is "that opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial." *Weymers*, 454 Mich at 659-660. Defendants' arguments

opposing the motion to amend did not explain how they lacked reasonable notice that plaintiff would offer a new claim at trial. Thus, they failed to meet their burden of proof showing prejudice as a result of a delay.

Moreover, defendants did have reasonable notice that plaintiff would seek a respondeat superior theory against Benteler for the battery claim. For instance, plaintiff's complaint alleged:

> 9. Seriously injured, laying on the cement floor of the Defendants' production facility, partially still under the load and weight of the heavy metal cart and parts that had just knocked him down, Roger Ruiz was in severe pain from the impact of the crushing injuries when he was ultimately confronted by *plant management* in the person of Defendant, Joan Talbot.
>
> * * *
>
> 11. Instead of doing the humane and the required thing, [s]eeking [m]edical [a]ttention [n]ow . . . *Defendants' management on the spot*, Defendant Joan Talbot, told Roger Ruiz to . . . "Get Up."
>
> * * *
>
> 16. With Roger Ruiz in desperate need of immediate medical attention, unable to move or be moved, production at a standstill, Defendant Talbot did not call for medical assistance of any kind. *No Benteler management level personnel* called 911, nor for an ambulance. *No Benteler management level personnel* called for in-house medical responder/nurse. No medical evaluation or assistance was provided to Roger Ruiz. (Emphasis added.)

Further, in response to defendants' motion for summary disposition, plaintiff asserted:

> Roger Ruiz obviously needed immediate, intensive medical care, starting with an ambulance with lights and sirens. Instead, what Roger Ruiz received from *defendants* was nothing short of inhumane behavior, behavior and conduct so bad that it would arguably violate Michigan's Animal Cruelty Statute.[] Those behaviors included physically pulling Roger up off the ground where he lay to force him to try to stand; physically dragging Roger along forcing him to try to walk; physically putting Roger in a wheelchair, wheeling it into a locked room, the Tool Cage; physically pulling at Roger's work boot on his crushed foot while he screamed in pain, then pulling repeatedly on his wet work boot, Roger urging that he was bleeding, that he needed to go to the hospital . . . that he needed an ambulance; confining Roger in the wheelchair, in the locked Tool Cage in the wheelchair while the *Defendants* took their time preparing paperwork to send Plaintiff . . . in a taxi . . . for drug testing and to be examined; confining Roger without his phone to call out on his own, as it was strict company written policy that employees have no phones while working[] . . . . There was no consent from Roger for any of this horrific behavior from *Defendants*. (Emphasis added.)

These arguments suggest that plaintiff's claim of battery originated from *defendants'* actions, and not solely from Talbot's behavior on the day of the accident. A finding of actual prejudice includes situations where the opposing party lacked notice "from *any source*, that the moving party would rely on the new claim or theory at trial." *Weymers*, 454 Mich at 659-660 (emphasis added). Defendants plainly had notice that plaintiff might later assert a claim of battery against all defendants. Because they were on notice of these possible claims, defendants would not suffer prejudice as the result of this amendment.

Even so, the trial court sided with defendants, reasoning:

> Bottom line then is that while I do believe there were opportunities for Plaintiff to raise these issue during the process of this litigation they chose to . . . identify count one strictly in terms of Ms. Talbot and to now expand that to Ms. Talbot acting on behalf of the other Defendants, I think, is inappropriate.

In other words, the trial court thought that because the respondeat superior theory could have been raised earlier in the proceedings, plaintiff's present request to add this claim would cause delay. But, as noted above, "[d]elay, alone, does not warrant denial of a motion to amend." *Weymers*, 454 Mich at 659. In considering plaintiff's motion, the trial court should have analyzed whether a delay caused by the amendment would have prejudiced defendants. Had it done so, it would have concluded that the amendment would not cause prejudice. The trial court's denial of the motion to amend on the basis of timeliness was an error of law, and it, therefore, abused its discretion in this regard.

## 2. FUTILITY

Defendants' other argument in opposition to the motion to amend was that plaintiff's claim against Benteler was futile. Generally speaking, when an employee makes a claim against an employer or coworker for a work-related injury, their exclusive remedies are the benefits provided by the WDCA. *Johnson*, 288 Mich App at 695-696; see also MCL 418.131(1). An exception to this general rule exists where the employee alleges an intentional tort. MCL 418.131(1). But an injured employee's burden of proof is distinguished from that of a "classic intentional tort." *Johnson*, 288 Mich App at 696. Rather,

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. [MCL 418.131(1).]

Therefore, "to recover under the intentional tort exception of the WDCA, a plaintiff must prove that his or her injury was the result of the employer's deliberate act or omission and that the employer specifically intended an injury." *Bagby v Detroit Edison Co*, 308 Mich App 488, 491; 865 NW2d 59 (2014).

> There are two ways for a plaintiff to show that an employer specifically intended an injury. The plaintiff can provide direct evidence that the employer had the particular purpose of inflicting an injury upon his employee. In the alternative, an

employer's intent can be proven by circumstantial evidence, i.e., that the employer has actual knowledge that an injury is certain to occur, yet disregards that knowledge. [*Id.* (quotation marks and citations omitted).]

"In the case of a corporate employer, a plaintiff need only show that 'a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do.' " *Johnson*, 288 Mich App at 697; quoting *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 714; 777 NW2d 205 (2009).

In *Ruiz I*, this Court concluded plaintiff made the preliminary showing to sustain a battery claim against Talbot. *Ruiz I*, unpub op at 3-4. Specifically:

Viewing this evidence in the light most favorable to plaintiff, a reasonable juror could conclude that Talbot committed a battery and specifically intended an injury. According to plaintiff, he told Talbot not to touch his boot, but she did it anyway, and he screamed. Then she did it up to 10 more times, all while plaintiff was screaming and asking her to not grab his boot. From this—the evidence viewed in the light most favorable to plaintiff—a reasonable juror could conclude that Talbot committed a battery and specifically intended an injury as required by MCL 418.131(1).[] [*Ruiz I*, unpub op at 4 (footnote omitted).]

For purposes of this appeal, this Court is bound to follow its earlier conclusions regarding Talbot's liability. See *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 91; 662 NW2d 387 (2003), quoting *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001) ("The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue.").

Thus, the only issue before this Court is whether, based on the facts presented, a reasonable jury could conclude Benteler is vicariously liable for Talbot's purported battery. Again, in regard to the knowledge requirement for corporate employers, "a plaintiff need only show that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Johnson*, 288 Mich App at 697 (quotation marks and citation omitted). The discovery period included the deposition testimonies of several witnesses whose testimonies demonstrate at the time of the incident Talbot was a "supervisory or managerial employee." For example, several witnesses explained that Talbot was employed as a "Production Unit Leader." Plaintiff also testified that as a Production Unit Leader, Talbot was "some kind of manager. I don't know the specific kind of manager it was, but she was a manager." Elmer reported that Talbot was "called a PUL, I am not exactly sure what it stands for but she is my boss." This information, together with our earlier conclusion that "a reasonable juror could conclude that Talbot committed a battery and specifically intended an injury[,]" establishes the knowledge requirement for corporate employers. See *Johnson*, 288 Mich App at 697.

The trial court reasoned that an amendment was futile because it was:

Unclear in this case whether the supervisory [sic], who[,] I believe[,] would testify that she was simply trying to assess the injury and minimize . . . whatever necessary mediation might have to occur. I don't think that is going on beyond her

representing the interest of the employer and certainly in that regard if the employer had known such behavior it could serve as the basis for employer liability if, in fact, it is shown that that kind of behavior exceeded the . . . protocol as set forth by the employer.

That is a question that has not been answered and it is a question that would have to be answered in order to present it to a trier of fact.

From this statement, it appears the trial court thought that to recover under MCL 418.131(1), a plaintiff must demonstrate that the tortfeasor's actions were within the scope of their employment. Although the trial court did not specify the legal basis for its conclusion, the trial court appears to have confused statutory vicarious liability under MCL 418.131(1) with common-law vicarious liability. Under the common law, "[a]n employer is generally liable for the torts its employees commit within the scope of their employment. It follows that an employer is not liable for the torts committed by an employee when those torts are beyond the scope of the employer's business." *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011) (quotation marks and citations omitted). Contrary to common-law vicarious liability, MCL 418.131(1) does not require a plaintiff to show a tortfeasor's actions were within the scope of their employment. In reaching its conclusion on the basis of an incorrect legal basis, the trial court committed an error of law that necessitates this Court's reversal. *Kostadinovski*, 511 Mich at 149-150.

In sum, the trial court abused its discretion in concluding plaintiff's proposed amendment would cause undue delay. It also abused its discretion when it determined plaintiff's amendment was futile. Plaintiff's proposed amendment is not futile because there is evidence showing plaintiff could recover against Benteler under MCL 418.131(1). The trial court abused its discretion when it based its analysis on whether Talbot's actions were within the scope of her employment.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron